STATE OF CONNECTICUT *v.* STEPHEN G.[1]
(AC 28232)

Bishop, McLachlan and Gruendel, Js.

<hr/>

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued January 5—officially released April 14, 2009

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Pamela J. Esposito*, assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Stephen G., appeals from the judgment of conviction, rendered after a trial to the court, of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A) and unlawful restraint in the second degree in violation of

General Statutes § 53a-96 (a). The defendant claims that (1) his conviction must be reversed because the record contains no waiver of his right to a jury trial and (2) the evidence was insufficient to establish sexual assault in the third degree. We reverse the judgment of the trial court.

The court reasonably could have found the following facts. L lived in Trumbull with her husband, two children and mother-in-law. On the morning of November 19, 2004, L was in need of a ride to St. Vincent's Hospital in Bridgeport to pick up certain paperwork. At approximately 11:15 that morning, the defendant, a cousin of her husband, called. L explained her predicament, and the defendant agreed to give her a ride to the hospital during his lunch break.

On the way to the hospital, the defendant asked L to perform fellatio on him when they returned to her home; L declined. He persisted with that request on the drive back to Trumbull to no avail. When they arrived at L's house, the defendant followed L into her bedroom and threw her onto the bed. When she got up, the defendant again threw L onto the bed, causing a part of the bed to break. L informed the defendant that he was scaring her. L managed to slip past the defendant, exiting the bedroom, but the defendant caught her in a hallway and forced her onto a bench. The defendant then "put his legs over [L's] legs so that [she] could not move . . . ." L testified that the defendant "pulled his pants down . . . shoved his . . . penis in my face . . . started jerking off, told me to stick my tongue out, and I could . . . barely stick my tongue out and [he] continued to jerk off in my face and then ejaculated on my tongue, like sort of in my mouth, and then backed up, pulled his pants up and said: 'That's not how a porn star does it.'" L testified that the encounter lasted "a minute, maybe, two minutes." L subsequently reported the incident to the Trumbull police, and the defendant

was arrested and charged with sexual assault in the third degree and unlawful restraint in the second degree.

A court trial followed, at the conclusion of which the court found the defendant guilty on both counts. The court found that "in the hallway, the defendant did in fact pin [L], by virtue of his size in comparison to her size, on the bench, and he did in fact masturbate, and he did in fact sexually assault her in the third degree. . . . [A]ll elements of that statute have been met, and . . . all elements of the unlawful restraint charge have also been met beyond a reasonable doubt." The defendant thereafter filed a motion for a judgment of acquittal on the sexual assault count. In that motion, the defendant stated: "The state did not prove beyond a reasonable doubt that the defendant is guilty of sexual assault in the third degree because there is no evidence that there was 'sexual [contact,' meaning] that the defendant touched her with his penis. In addition, although there was evidence that the defendant ejaculated on her, ejaculate is not an 'intimate part.' To have 'sexual contact' under the statute there must be contact with an intimate part. Pursuant to [General Statutes] § 53a-72a and the definitions supplied [by General Statutes] § 53a-65 (3) and 53a-65 (8), the alleged facts, even if accepted in [total, do] not fit the charge." At the February 15, 2006 hearing on the motion, the state repeated its theory of proximity with the genital area and contact with ejaculate, arguing that ejaculate was included within the definition of sexual contact. The state further argued that the state had proven contact via L's testimony that the defendant had "shoved his penis in [her] face" and that he had pinned her down using his thighs. At the conclusion of the hearing, the court reserved judgment on the motion.

On March 14, 2006, the court ruled on the motion for a judgment of acquittal from the bench. The court

articulated the factual basis of its decision, finding that the defendant used his superior weight to wrap his legs around L and pin her to the bench. The court stated that "it is a reasonable and logical conclusion . . . that not only did the defendant place his inner thighs against [L], but also, he forced contact with his genital area with [L's] body." The court continued: "[The defendant] then proceeded to masturbate and sprayed ejaculate onto her face. I think it's also a reasonable and logical inference for this court to find that at some point, there was contact between the defendant's penis and [L], but that's not . . . needed because he definitely had contact with his inner thighs and with his genital area just by the fact that he was straddling her and pinning her." The court stated that "straddling [L's] body with his legs, making contact with his inner thighs . . . the logical inference is that his genital area also came into contact with the victim. I don't see how it could not have." As such, the court found that the defendant's "contact with his inner thighs and genital area, statutorily designated intimate parts," constituted sexual contact. The court thus denied the defendant's motion for a judgment of acquittal. This appeal followed.

I

The defendant first claims that his conviction must be reversed because the record contains no waiver of his right to a jury trial. "The right to a jury trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . [T]he definition of a valid waiver of a constitutional right [is] the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has

been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book." (Citations omitted; internal quotation marks omitted.) *State* v. *Ouellette*, 271 Conn. 740, 751–52, 859 A.2d 907 (2004).

The defendant did not preserve his claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2] In *State* v. *Gore*, 288 Conn. 770, 955 A.2d 1 (2008), our Supreme Court held that "because the right to a jury trial is uniquely personal to the defendant, an affirmative indication of the defendant's personal waiver of this right must appear on the record, and the defendant's silence or failure to object to defense counsel's purported waiver is constitutionally insufficient to demonstrate a valid waiver." Id., 783. As the record in that case did not reflect any indication from the defendant personally that he had waived his fundamental right to a jury trial, the court concluded that "the waiver expressed by defense counsel was insufficient to constitute a valid waiver, and that the defendant has satisfied the third prong of *Golding*." Id., 789–90.

---

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40. *Golding*'s first two prongs relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Jarrett*, 82 Conn. App. 489, 492 n.1, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

The state acknowledges that *Gore* controls the present case, conceding that there is no affirmative indication from the defendant on the record that he waived his right to a jury trial. We agree. On that basis, the defendant is entitled to a new trial.[3]

## II

The defendant next claims that the evidence adduced at trial was insufficient to establish sexual assault in the third degree.[4] He contends that there was insufficient evidence from which the court could have concluded beyond a reasonable doubt that sexual contact had occurred.

We begin by noting that "for the purposes of sufficiency review after concluding that a new trial is required, we review the sufficiency of the evidence as the case was tried; in other words, we review the evidence in its improperly restricted state, impropriety

[3] The defendant also alleged in his appellate brief that his rights to due process and to present a defense were violated by the state's attempts to impeach his alibi witness and that the court violated his due process rights by its reliance on facts that were not in evidence. In his reply brief, the defendant abandons those claims in light of the state's concession that the record contains no waiver of his right to a jury trial, as they are unlikely to arise on retrial.

[4] Although we conclude that the defendant's conviction must be reversed and a new trial ordered, we address the defendant's evidential insufficiency claim because a finding that the evidence was insufficient to convict him would result in a judgment of acquittal as to that count. See *State* v. *Padua*, 273 Conn. 138, 178–79, 869 A.2d 192 (2005) ("[i]nterests of judicial efficiency, sound appellate policy and fundamental fairness require a reviewing court to address a defendant's insufficiency of the evidence claim prior to remanding a matter for retrial because of trial error"); *State* v. *Theriault*, 38 Conn. App. 815, 823 n.7, 663 A.2d 423 ("[a]lthough we find the defendant's [jury charge claim] dispositive, we must address the sufficiency of the evidence claim since the defendant would be entitled to an acquittal of the charge if she prevails on this claim"), cert. denied, 235 Conn. 922, 666 A.2d 1188 (1995). That claim was properly preserved by his motion for a judgment of acquittal. See *State* v. *Padua*, supra, 146 n.12. The defendant alleges only that the evidence was insufficient to support his conviction of sexual assault in the third degree. He does not challenge the sufficiency of the evidence with respect to his conviction of unlawful restraint in the second degree.

notwithstanding. . . . [A] claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Smith*, 73 Conn. App. 173, 179–80, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002). "[T]he [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard of review for a sufficiency of the evidence claim employs a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [finder of fact] if there is sufficient evidence to support [its] verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

It is axiomatic that "the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, it does not

diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006). With that standard in mind, we turn to the defendant's claim.

General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ." The term "sexual contact," in turn, is defined as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose

of sexual gratification of the actor or for the purpose of degrading or humiliating such person." General Statutes § 53a-65 (3). "Intimate parts" is defined as "the genital area, groin, anus, inner thighs, buttocks or breasts." General Statutes (Rev. to 2003) § 53a-65 (8).

## A

We consider first the court's conclusion that "it's . . . a reasonable and logical inference for this court to find that at some point, there was contact between the defendant's penis and [L] . . . ."[5] To establish the defendant's guilt under § 53a-72a (a) (1) (A), the state was required to prove beyond a reasonable doubt, inter alia, that the defendant subjected L to contact with an intimate part. Although the state presented evidence that the defendant masturbated directly in front of L, there simply is no evidence whatsoever in the record that contact occurred between the defendant's penis and L. The state never asked L if she came in contact with the defendant's penis, nor did she so testify.[6] In light of that dearth of evidence, we conclude that the element of contact via the defendant's penis was not established beyond a reasonable doubt.

[5] At trial, there was no allegation or evidence that the defendant made contact with an intimate part of L. Rather, the issue was whether an intimate part of the defendant had contact with L.

[6] The state did ask L whether the defendant's hand made contact with her as he masturbated, to which L responded negatively:

"[The Prosecutor]: [C]ould you describe to the court, please, the motion with which [the defendant] was ejaculating; was he using one hand or two?

"[The Witness]: One.

"[The Prosecutor]: Where was the other hand?

"[The Witness]: Probably down by his side, I guess. . . .

"[The Prosecutor]: Do you recall the motion that he was using to ejaculate in your face?

"[The Witness]: Yes, like how you—like this.

"[The Prosecutor]: So, the shaft of his penis was in his hand; is that right?

"[The Witness]: Yes.

"[The Prosecutor]: And do you recall if he was touching your face with his hand as he was ejaculating at all?

"[The Witness]: No, no."

## B

We likewise conclude that the element of contact with an intimate part was not proven beyond a reasonable doubt by evidence indicating that the defendant ejaculated on L. Under § 53a-65 (8), as the 2003 revision of that statute reads, the definition of "intimate parts" does not include ejaculate or other bodily substance.[7] In his motion for a judgment of acquittal, the defendant raised that precise argument. The state concedes in its appellate brief that "the court . . . did not reach the legal issue of whether ejaculate in the face fell within the statutory definition of sexual contact." On appeal, the state does not contend that the statutory definition encompasses ejaculate. We are mindful that we "must refrain from imposing criminal liability where the legislature has not expressly so intended. . . . [C]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant. . . . [U]nless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." (Citations omitted; internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 788–89, 772 A.2d 559 (2001). Absent any argument to the contrary, we must conclude that the element of contact with an intimate part was not proven beyond a reasonable doubt in the present case by evidence that the defendant ejaculated on L.

## C

We next consider the court's determination that L's contact with the defendant's inner thighs constituted

---

[7] We note that General Statutes (Rev. to 2003) § 53a-65 (8) subsequently was revised by Public Acts 2006, No. 06-11, § 1, to include "the genital area or any substance emitted therefrom . . . ." (Emphasis added.) General Statutes § 53a-65 (8).

sexual contact. Apart from his claim of evidential insufficiency, the defendant contends that his due process rights under the sixth and fourteenth amendments to the constitution of the United States have been compromised because he did not have notice of the charge and an opportunity to defend against it. The defendant concedes that his claim is unpreserved and requests *Golding* review. We review the defendant's claim because the record is adequate for review and the claim is of constitutional magnitude. See *Cole* v. *Arkansas*, 333 U.S. 196, 201, 68 S. Ct. 514, 92 L. Ed. 644 (1948).

"It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process. . . . These standards no more than reflect a broader premise that has never been doubted in our constitutional system: that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." (Citations omitted.) *Jackson* v. *Virginia*, 443 U.S. 307, 314, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); see also *State* v. *Sirimanochanh*, 224 Conn. 656, 664, 620 A.2d 761 (1993). As the United States Supreme Court noted, "[i]t is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Cole* v. *Arkansas*, supra, 333 U.S. 201. Similarly, regarding theories of prosecution, "it is well established that [o]ur rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *State* v. *Scruggs*, 279 Conn. 698, 718–19, 905 A.2d 24 (2006).

Upon the defendant's arrest, the state alleged in its short form information that he had violated § 53a-72a. The defendant then sought a bill of particulars identifying the "specific acts allegedly attributed to [him]"and

the "specific statutory subsection(s) and/or subsections(s) alleged.[8] In response, the state filed a long form information that alleged in relevant part that "on or about the 19th day of November, 2004 [the defendant] did compel [L] to sexual contact with his intimate parts, to wit: *his genital area,* by the use of force against her, in violation of [General Statutes] § 53a-72 (a) (1) (A)." (Emphasis added.) Although the definition of "intimate parts" provided by General Statutes (Rev. to 2003) § 53a-65 (8) includes "the genital area, groin, anus, inner thighs, buttocks or breasts," the state plainly did not allege sexual contact via the defendant's inner thighs, nor did it pursue such a theory at trial.[9] Rather, it was only after the court rendered judgment and the defendant moved for a judgment of acquittal that the state raised the possibility that sexual contact was established by contact with the defendant's inner thighs. "The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to enable him to prepare his defense and avoid prejudicial surprise." (Internal quotation marks omitted.) *State* v. *Reynolds,* 264 Conn. 1, 155, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). In light of the foregoing, we conclude that the defendant was not so informed.

At the same time, "[i]t is the defendant's burden on appeal to demonstrate that he was in fact prejudiced in his defense on the merits as a result of a material variance between the allegations in a bill of particulars and proof at trial, and that substantial injustice was

---

[8] "A bill of particulars limits the state to proving that the defendant has committed the offense in substantially the manner described." (Internal quotation marks omitted.) *State* v. *Correa,* 241 Conn. 322, 341, 696 A.2d 944 (1997).

[9] The only statement made by the prosecutor in her closing argument pertaining to sexual contact was as follows: "I believe there's testimony at some point the penis itself was making contact—but certainly there's no doubt that she indicated that the semen was on her face . . . ."

done to him because of the language of the state's pleadings." (Internal quotation marks omitted.) Id.; *State* v. *Roque*, 190 Conn. 143, 156, 460 A.2d 26 (1983). The defendant has not met that burden. His defense was predicated on an alibi witness, who testified that he was with the defendant at the time of the alleged assault. If the court, as fact finder, had credited his defense, he would have been acquitted of sexual assault in the third degree. That defense encompassed the claim of sexual assault via contact with his genital area as well as sexual assault via contact with his inner thighs. See *State* v. *Franko*, 199 Conn. 481, 491, 508 A.2d 22 (1986). Our appellate courts have rejected similar due process challenges in the face of an alibi defense. See *State* v. *Milardo*, 224 Conn. 397, 415, 618 A.2d 1347 (1993); see also *State* v. *Sirimanochanh*, supra, 224 Conn. 664–65. Furthermore, during the prosecution of its case, the state presented evidence that the defendant pinned L to the bench by forcefully straddling her. There is nothing in the record to suggest that the defendant would have altered his alibi defense had he believed that the state was proceeding on a theory of contact with his inner thighs as opposed to his genital area. As a result, the defendant cannot demonstrate the requisite prejudice resulting from the state's failure to provide proper notice regarding sexual contact by his inner thighs.

Although the court's consideration of the issue of contact with the defendant's thighs was proper, we must also evaluate its conclusion thereon. The defendant maintains that there was insufficient evidence from which the fact finder could have concluded beyond a reasonable doubt that L made contact with his inner thighs. We do not agree.

L testified at trial as to the manner in which the defendant physically assaulted her. After forcing her to a bench in the hallway of her home, L testified that the

defendant "put his legs over my legs so . . . I could not move even if I wanted to." L later described that positioning in greater detail and visually demonstrated how the defendant was positioned. She testified as follows:

"[The Prosecutor]: Now, you described his legs around your body.

"[The Witness]: Yep. . . .

"[The Prosecutor]: Where were you seated?

"[The Witness]: I was seated like this. . . .

"[The Prosecutor]: . . . Explain to the court, please, how high that bench is. Is it as high as the chair that you are sitting in now?

"[The Witness]: Yes, maybe a little—yes. I would say like this. . . .

"[The Prosecutor]: And describe to the court, please, by showing—using your own body so the court can see you seated in your chair, could you please indicate how you were seated on the bench?

"[The Witness]: Like this. I don't know if you can see.

"The Court: The record will indicate that the witness is seated with her legs together and her feet flat on the floor.

"[The Witness]: Right. . . .

"[The Prosecutor]: Describe, please, how [the defendant] was in relation to your body.

"[The Witness]: Well, I have to stand up.

"[The Prosecutor]: Okay. . . . May she stand up, Judge?

"The Court: Yes.

"[The Witness]: I was seated like this; he was seated—or his legs were over mine.

"The Court: Straddling you?

"[The Witness]: Yes, right.

"The Court: Okay.

"[The Prosecutor]: Thank you. And, again, from your seated position, can you indicate on your leg where his knees were? You are saying that his legs were straddling you?

"[The Witness]: Well, he's taller. They were maybe, like, right here. Well, his knees—well, I know his penis was in my face, so his knees must have been down around down here.

"[The Prosecutor]: Could you feel his legs on your legs?

"[The Witness]: Yeah, because they were holding me there. I went—there was no way I could move."

The court thus was presented with evidence not only that the defendant surrounded L's legs with his own, but that he straddled her.[10] The court also was presented with evidence that, by so doing, the defendant restrained L. In addition, L demonstrated to the court the precise positioning by which the defendant accomplished that restraint. The court expressly credited L's testimony.

As an appellate body constrained by a cold record, we have no way of reviewing L's visual demonstration in any meaningful way. As such, we must defer to the trial court's superior vantage of assessment. "Our authority, when reviewing the findings of a judge, is

---

[10] Straddling is "the act of standing, sitting, or walking, with the legs wide apart." Webster's New International Dictionary (3d Ed.) p. 2254.

circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence." (Internal quotation marks omitted.) *LaVelle* v. *Ecoair Corp.*, 74 Conn. App. 710, 716, 814 A.2d 421 (2003); see also *Feen* v. *New England Benefit Cos.*, 81 Conn. App. 772, 780, 841 A.2d 1193 (noting trial court's "superior position to evaluate those factors as they coalesce at trial and the disparate ability of a reviewing court to glean such things from the written record"), cert. denied, 269 Conn. 910, 852 A.2d 739 (2004); *State* v. *Salerno*, 36 Conn. App. 161, 170–71, 649 A.2d 801 (1994) ("trial court occupied the best vantage point for assessing courtroom events"), appeal dismissed, 235 Conn. 405, 666 A.2d 821 (1995). Indeed, this court lacks any vantage point to review that evidence. Having observed L's physical representation as to the manner in which the defendant forcefully pinned her to the bench, the court, as the finder of fact, was in a better position to evaluate that evidence and draw reasonable inferences therefrom. That evidence undoubtedly informed the court's consideration of whether contact transpired between the defendant's thighs and L.

In denying the defendant's motion for a judgment of acquittal, the court found that the defendant "did forcibly restrain [L] . . . straddling her body with his legs, making contact with his inner thighs . . . ." Although the defendant, on appeal, argues that the height difference between L and the defendant suggests that he had "his knees, and therefore his thighs, above [L's] knees and above her legs," we are mindful that "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, supra, 279 Conn. 403. In reviewing

claims of evidential insufficiency, our role is limited. The question is not whether this court might have reached the same conclusion but whether the trial court could not reasonably have concluded as it did. Construing the evidence in the light most favorable to sustaining the trial court's finding, the cumulative effect of the aforementioned evidence supports the court's finding that sexual contact occurred beyond a reasonable doubt. Accordingly, the court's denial of the motion for a judgment of acquittal was not improper.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.