The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 6, 2018

## 2018COA129

**No. 16CA1298, People v. Ramirez — Crimes — Unlawful Sexual Behavior — Sexual Assault on a Child — Sexual Assault on a Child by One in a Position of Trust**

In this sexual assault on a child case, a division of the court of appeals holds that semen is not an intimate part as defined by section 18-3-401(2), C.R.S. 2017.  Because the evidence presented at trial did not prove that the defendant touched an intimate part of the victim or that the victim touched the defendant's intimate part, the division concludes that there was insufficient evidence to support the defendant's convictions for sexual assault on a child and sexual assault on a child by one in a position of trust.  The division therefore vacates those convictions.  The division affirms the defendant's convictions for indecent exposure.

The dissent disagrees, and would hold that, under the particular circumstances of the case, semen is part of the external genitalia as included in the statutory definition of intimate parts. § 18-3-401(2). Accordingly, the dissent would conclude that the evidence was sufficient to support defendant's convictions for sexual assault on a child.

COLORADO COURT OF APPEALS     **2018COA129**

Court of Appeals No. 16CA1298
Adams County District Court No. 15CR794
Honorable Francis C. Wasserman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Senon Louis Ramirez,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART

Division IV
Opinion by JUDGE BERGER
Kapelke*, J., concurs
Davidson*, J., dissents

Announced September 6, 2018

Cynthia H. Coffman, Attorney General, Ellen M. Neel, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1 A jury convicted defendant Senon Louis Ramirez of sexual assault on a child (SAOC), sexual assault on a child by one in a position of trust (SAOC-POT), and indecent exposure, based on testimony that he ejaculated into the hands of his foster child and then required the child to swallow the semen. Ramirez claims that there was insufficient evidence to support his convictions for SAOC and SAOC-POT. He does not challenge his conviction for violating the indecent exposure statute.

¶ 2 The sole issue presented is whether the statutes defining SAOC criminalize Ramirez's reprehensible conduct.[1] Applying the plain language of these statutes, we conclude that Ramirez's convictions for SAOC and SAOC-POT cannot stand. We decline the Attorney General's invitation to rewrite the statute to criminalize this conduct because we do not have the authority to do so.

I.  Relevant Facts and Procedural History

¶ 3 Ramirez was convicted of SAOC and SAOC-POT based on the following evidence.

---

[1] In view of our disposition we do not address Ramirez's separate contention that the trial court erred in answering two jury questions.

¶ 4     When the victim was four years old, Ramirez, her foster father, ordered her and her sister to approach him.  He placed their hands in front of him, pulled down his pants and underwear, and masturbated.  Ramirez ejaculated into their hands and made them drink the semen.  The victim testified that Ramirez never touched any of her "private parts" and that she never touched his "private parts."

¶ 5     The children were later adopted by another family and some years later the victim disclosed the incident to her adoptive mother, who notified the police.

¶ 6     Ramirez was charged with two counts of SAOC (one count as to the victim and one count as to her sister); two counts of SAOC-POT) (again, one count as to each child); and two counts of indecent exposure (one count for each child).  The jury convicted him of one count of SAOC and one count of SAOC-POT as to the victim, and two counts of indecent exposure (one count for each child).  The jury acquitted Ramirez of one count of SAOC and one count of SAOC-POT as to the sister.

## II. The Prosecution Did Not Prove Either that Ramirez Touched the Victim's "Intimate Part[]"or that the Victim Touched Ramirez's "Intimate Part[]"

### A. Standard of Review and Preservation

¶ 7    "We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005).  We must determine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973).  When the prosecution fails to present sufficient evidence to support a finding of guilt on every element of the offense, the constitutional prohibitions against double jeopardy usually prohibit a retrial.  U.S. Const. amend. V; Colo. Const. art. II, § 18; *People in Interest of H.W.*, 226 P.3d 1134, 1138 (Colo. App. 2009).

¶ 8    Ramirez's sufficiency of the evidence contention turns on the meaning of sections 18-3-401(2) and (4), C.R.S. 2017, the statutes that define the critical terms contained in the statutes that

criminalize SAOC and SAOC-POT.  We review questions of statutory interpretation de novo.  *People v. Vecellio*, 2012 COA 40, ¶ 13.

¶ 9     "When interpreting a statute, we must give effect to the intent of the General Assembly, which is vested with the power to define criminal conduct and to establish the legal components of criminal liability."  *Id.* at ¶ 14.  We begin with the plain language of the statute, reading the words and phrases in context and construing them according to their common usage.  *Id.*  If the statutory language is clear and unambiguous, we apply it as written without resort to further statutory analysis.  *Id.*  We "respect the legislature's choice of language," *Turbyne v. People*, 151 P.3d 563, 568 (Colo. 2007), and "do not add words to the statute or subtract words from it," *id.* at 567.

¶ 10    Ramirez moved for judgment of acquittal on the same grounds he asserts on appeal.  Therefore, he has preserved his insufficiency of the evidence claim.

### B.     "Intimate Parts" Does Not Include Semen

¶ 11    To commit the crimes of SAOC and SAOC-POT the defendant must have "sexual contact" with a child.  § 18-3-405(1), C.R.S. 2017; § 18-3-405.3(1), C.R.S. 2017.

¶ 12     Section 18-3-401(4) defines "sexual contact" as

>   the knowing *touching* of the victim's *intimate parts* by the actor, or of the actor's *intimate parts* by the victim, or the knowing *touching* of the clothing covering the immediate area of the victim's or actor's *intimate parts* if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

(Emphasis added.)

¶ 13     The statutory definition of "intimate parts" is:

>   the external genitalia or the perineum or the anus or the buttocks or the pubes or the breast of any person.

§ 18-3-401(2).

¶ 14     Combining these two statutory definitions, to prove the crimes of SAOC and SAOC-POT the prosecution must prove, beyond a reasonable doubt, that "for the purposes of sexual arousal, gratification, or abuse" the defendant knowingly touched the victim's "intimate parts" (directly or through the victim's clothing) or that the victim touched the defendant's "intimate parts." §§ 18-3-401, -405, -405.3.  The touching must be of the "external genitalia or the perineum or the anus or the buttocks or the pubes of the breast of any person." § 18-3-401(2).

¶ 15     Ramirez argues that because there was no evidence that he touched the victim's "intimate parts" or that the victim touched his "intimate parts" he cannot be convicted of either SAOC or SAOC-POT.

¶ 16     In response, the Attorney General first contends that when Ramirez's semen touched the victim's hands, a "touching" occurred within the meaning of section 18-3-401(4).  That argument is supported by a division of this court's decision in *People v. Vinson*, 42 P.3d 86, 87-88 (Colo. App. 2002).  There the division concluded that the defendant's act of ejaculating onto the victim's buttocks was a "touching" of the victim's "intimate parts."  *Id.* at 87.  We agree with *Vinson*; ejaculating onto the intimate parts of the victim constitutes sexual contact within the meaning of section 18-3-401(4).

¶ 17     But the prosecution must also prove that the touching was of an "intimate part[]," as defined by section 18-3-401(2).  Here, *Vinson* does not help the Attorney General because in *Vinson* the touching was of the victim's buttocks, one of the body parts defined by section 18-3-401(2) as an "intimate part."  *Vinson*, 42 P.3d at 87.

In contrast, here, the touching was of the victim's hands, which are not "intimate parts" as defined in the statute.

¶ 18    To avoid this rather significant problem, the Attorney General posits that Ramirez's semen was his "intimate part[]" with which he touched the victim. (In this context it makes no difference if Ramirez's "intimate part[]" touches a part of the victim's body which is not an "intimate part[]." ) However, section 18-3-401(2) does not mention semen. Thus, unless semen somehow is encompassed within the items included in the definition of "intimate parts," it cannot constitute an "intimate part[]" of Ramirez.

¶ 19    The Attorney General contends, however, that semen is part of Ramirez's "external genitalia." The statute does not define "external genitalia"; therefore, we consult the dictionary to determine its meaning. *See People v. Fioco*, 2014 COA 22, ¶ 19. Genitalia are "the organs of the reproductive system; especially: the external genital organs." *Webster's Third New International Dictionary* 946 (2002).

¶ 20    Nor is semen defined in the statute (indeed semen is not mentioned in the statute at all). Semen is a "fluid produced in the male reproductive tract." *Id.* at 2062.

7

¶ 21     These dictionary definitions permit only one, inexorable conclusion: semen is not part of the male genitalia; it is a fluid produced by the male body and emitted by male genitalia.

¶ 22     The Attorney General next argues that the supreme court in *Woellhaf v. People*, 105 P.3d 209, 212-13 (Colo. 2005), held that ejaculation onto a victim's body part constitutes "sexual contact" even if the touching was not of an "intimate part[]."  But, *Woellhaf* did not analyze whether the ejaculation in that case constituted sexual contact within the meaning of section 18-3-401, and *Woellhaf* certainly did not purport to rewrite section 18-3-401(2). So far as the opinion discloses, no party raised the issue that is determinative here; instead, the supreme court addressed questions of multiplicity and double jeopardy.  *See id.* at 220.  *Woellhaf*, therefore, does not support the Attorney General's argument.

¶ 23     Because we must construe the statutory language according to its plain and ordinary meaning, we conclude that semen is not an "intimate part[]" within the meaning of section 18-3-401(2).  In the end, for whatever reason, the General Assembly did not include semen in the definition of "intimate parts."  "[I]n interpreting a statute, we must accept the General Assembly's choice of language

8

and not add or imply words that simply are not there." *People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009).

¶ 24 Courts in other jurisdictions also have rejected the theory that semen constitutes an "intimate part[]" under statutes similar to Colorado's. For example, in *State v. Stephen G.*, the Connecticut intermediate appellate court concluded that where the legislature had defined "intimate parts" as "the genital area, groin, anus, inner thighs, buttocks or breasts," the prosecution had to prove that the defendant subjected the victim to contact with one of the listed "intimate parts." 967 A.2d 586, 593 (Conn. App. Ct. 2009) (citation omitted). When the evidence established that the defendant ejaculated on the victim's face and mouth, the court held that "the element of contact with an intimate part was not proven beyond a reasonable doubt." *Id.* at 593-94.

¶ 25 A similar argument was rejected by the Wisconsin Court of Appeals in a case decided before Wisconsin's legislature expanded the definition of "sexual contact" to include the "[i]ntentional penile ejaculation . . . by the defendant," *see* Wis. Stat. 948.01(5)(a)(2)(b) (2017). The court held that the legislature "simply failed to include semen ejaculation under the definition of sexual contact" and,

therefore, the ejaculation by the defendant onto the victim's stomach did not constitute sexual contact within the meaning of Wisconsin's statute. *State v. J.G.*, 588 N.W.2d 927, *3-4 (Wis. Ct. App. 1998) (unpublished opinion).

¶ 26    The Attorney General has not cited, and we have not found, a single decision by any court that accepts the theory that semen is an "intimate part[]" under a statute that is substantially similar to Colorado's.

¶ 27    Nevertheless, the Attorney General relies on cases which construed statutes very different from the controlling statute in Colorado. For example, in the statute at issue in *State v. Jackson*, "sexual contact" was defined as "any touching of the sexual *or other intimate parts of a person* done for the purpose of gratifying sexual desire." 187 P.3d 321, 323 (Wash. Ct. App. 2008) (emphasis added) (citation omitted). Under that statute, contact was "intimate" when "the conduct is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper." *Id.* And, "[w]hich anatomical areas, apart from genitalia and breast, are 'intimate' [was] a question for the

10

trier of fact." *Id.* This definition of an intimate part is vastly different from Colorado's definitional statute, which specifically and exclusively defines "intimate parts."[2]

¶ 28   The Attorney General also relies on *State v. Dawson* where the Missouri Court of Appeals held that placing semen in a person's drinking mug, and requiring the victim to drink it, constituted physical contact sufficient to sustain a conviction for *non*-sexual assault. 985 S.W.2d 941, 952 (Mo. Ct. App. 1999). The applicable statute in that case defined "physical contact" as "the touching of the person of another or something so intimately associated with, or attached to his person to be regarded as a part thereof." *Id.* at 951 (citation omitted). That language is much broader than the language chosen by the Colorado General Assembly, and easily encompasses ejaculated semen.

---

[2] In addition, the defendant in *Jackson* did not argue that his semen was not an "intimate part[]" but instead argued that ejaculating on another was not a "touching" for the purposes of proving a sexual contact. *State v. Jackson*, 187 P.3d 321, 323 (Wash. Ct. App. 2008). As noted above, a division of this court has resolved that question in favor of the Attorney General, a decision we follow in this case. *People v. Vinson*, 42 P.3d 86, 88 (Colo. App. 2002).

11

¶ 29    It is worth noting that a number of states have avoided the problem presented by this case because their SAOC statutes expressly criminalize the behavior engaged in by Ramirez.  In Idaho, "sexual contact" includes "human masturbation" as well as the touching of intimate parts.  Idaho Code § 18-1506(4) (2017). California proscribes the "intentional masturbation of the perpetrator's genitals in the presence of a child."  Cal. Penal Code § 11165.1(b)(5) (2017); *see also* Ga. Code. Ann. § 16-12-100(a)(4)(C) (2017) (defining masturbation as "sexually explicit conduct"); N.J. Stat. Ann. § 2C:24-4 (West 2017) (listing masturbation as a "prohibited sexual act").

¶ 30    The Attorney General's final arguments are, in effect, pleas for us to rewrite the statute to punish Ramirez for his disgusting behavior.

¶ 31    The Attorney General argues, and the dissent would hold, that excluding semen from the definition of "intimate parts" defeats the legislative intent to prohibit a broad range of "sexual contact."  We reject this argument because we discern the legislative intent from the plain words of the statute if, as here, the statute is unambiguous.  *See People v. G.S.,* 2018 CO 31, ¶ 15.  "[I]f the

statutory language is clear and unambiguous, we look no further." *Am. Family Mut. Ins. Co. v. Barriga*, 2018 CO 42, ¶ 8.

¶ 32     The Attorney General next contends, and the dissent again agrees, that it is "absurd" to think that the General Assembly did not intend to include this conduct within the sexual assault on a child statute (even though his conduct *is* criminalized by the indecent exposure statute, section 18-7-302, C.R.S. 2017).  While the result mandated by the statutory language likely is undesirable to almost everyone, that does not give us a license to improve or rewrite the statute.  *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008).

¶ 33     The Attorney General also argues that we should follow other divisions of this court that have rejected a narrow reading of the SAOC and SAOC-POT statutes.  For this argument, the Attorney General relies on *People v. Sparks*, 2018 COA 1; *People v. Pifer*, 2014 COA 93; and *People v. Cook*, 197 P.3d 269 (Colo. App. 2008).

¶ 34     But we are not "narrow[ly] reading" the statute.  We are simply applying the plain words of the statute.  Unlike this case, in the cases relied on by the Attorney General the divisions addressed terms which were *not* statutorily defined.  In *Sparks*, ¶¶ 10-14, the

division addressed the meaning of "subjects another" as used in section 18-3-405(1). *Pifer*, ¶ 11, concluded that the touching of a victim through a sheet and her clothes was a touching within the meaning of the statute. Finally, in *Cook*, the division held that forcing the victim to self-touch was "constructive touching" under the statute. 197 P.3d at 278. In each of these cases, the divisions construed undefined statutory terms.

¶ 35    Thus, having concluded that semen is not an "intimate part[]" as defined by the General Assembly, we now turn to the evidence presented at trial to determine if the prosecution presented sufficient evidence to sustain Ramirez's SAOC and SAOC-POT convictions.

C.    The Evidence Did Not Prove that Ramirez Touched an "Intimate Part[]" of the Victim or that the Victim Touched an "Intimate Part[]" of Ramirez

¶ 36    The victim testified at trial that she never touched Ramirez's "private part" and that he never touched hers. The prosecution also offered, and the trial court admitted, a video recording of the victim's forensic interview in which the victim repeatedly stated that she did not touch Ramirez's "private part."

14

¶ 37    Despite this, the Attorney General argues that the victim's testimony supports a finding by the jury that the victim *could have* (or even must have) touched Ramirez's penis when he ejaculated into her hands.  To support this argument, the Attorney General speculates that in order to ejaculate on the victim's hands, Ramirez's penis must have touched the victim's hand.

¶ 38    The Attorney General also argues that some of the victim's testimony at trial was sufficiently vague that a reasonable juror could have found that the victim did indeed touch Ramirez's penis.  For this argument, the Attorney General relies on the following testimony:

> [Prosecutor]: Was there ever a time that he had you touch his private?
>
> [Victim]: No, there was not.
>
> [Prosecutor]: Just this one time?
>
> [Victim]: Yes.

¶ 39    Our response to both of these arguments is the same.  While we give great deference to a jury's verdict, view the evidence in the light most favorable to the prosecution, and draw all reasonable inferences in favor of the prosecution, the evidence must still be "substantial and sufficient" to support the conviction.  *Bennett,* 183

Colo. at 130, 515 P.2d at 469. "[T]here must be a logical and convincing connection between the facts established and the conclusion inferred." *Clark v. People*, 232 P.3d 1287, 1292 (Colo. 2010).

¶ 40    The Attorney General's arguments are wholly speculative and directly contradict the unrebutted testimony of the victim both at trial and in her forensic interview. Permitting a criminal conviction to rest on this type of speculation would eviscerate the constitutional mandate that the evidence be "*substantial and sufficient* to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Bennett*, 183 Colo. at 130, 515 P.2d at 469 (emphasis added).

¶ 41    Given our conclusion that semen does not constitute an "intimate part[]" within the meaning of the statute — as well as the fact that the Attorney General does not contend that the victim's hands or mouth were her "intimate parts" — it follows that the evidence was insufficient to prove beyond a reasonable doubt that Ramirez committed SAOC or SAOC-POT. Therefore, we vacate Ramirez's SAOC and SAOC-POT convictions.

### III.  Conclusion

¶ 42    Ramirez's convictions for SAOC and SAOC-POT are vacated, and the district court, on remand, is directed to dismiss those charges with prejudice.  Because Ramirez did not appeal his convictions for indecent exposure, those convictions are affirmed.

JUDGE KAPELKE concurs.

JUDGE DAVIDSON dissents.

JUDGE DAVIDSON, dissenting.

¶ 43    Defendant forcibly placed a child's hands near his penis, ejaculated into them, and then forced the child to drink the semen. According to the majority, this was not sexual assault on a child because the child did not touch any of defendant's intimate parts as that term is defined in the sexual assault on a child statute.

¶ 44    I respectfully dissent for two related reasons: (1) under these facts, defendant's semen satisfies the statutory definition of intimate parts; and (2) it is both contrary to legislative intent and absurd that, for purposes of prohibiting sexual contact with children, a grown man's intimate parts includes his penis but not the sexual excretions of his penis.

I.    The Evidence and The Majority's Conclusion

¶ 45    The victim was of pre-school age at the time of the incident.  At her forensic interview, she described what happened: "[H]e just grabbed my hands and then he put it umm near his private part and then, *well I didn't actually touch it,* but I umm, I had, *I had to put it close* to his private part, and then he let it go and then, and then he squeezed his private part and then milk came out into my hands."  (Emphasis added.)

18

¶ 46    Her testimony at trial was basically the same, although less detailed, and a bit confusing:

> [Prosecution]: Was there ever a time that he had you touch his private?
>
> [Vitim]: No, there was not.
>
> [Prosecution]: *Just this one time?*
>
> [Victim]: *Yes.*

(Emphasis added.)  The victim also testified that she could not remember whether she had kissed defendant's penis.

¶ 47    The majority concludes that this evidence was not sufficient to convict defendant of sexual assault on a child.  That offense requires sexual contact, which in turn requires, as relevant here, that the victim touched the defendant's intimate parts.  § 18-3-401(4), C.R.S. 2017 (sexual contact means the victim touching the actor's intimate parts); § 18-3-405(1), C.R.S. 2017 (sexual assault on a child requires sexual contact).  The majority concludes that because the victim touched only defendant's semen, not his penis, the victim did not touch the defendant's intimate parts.  Therefore, according to the majority, there was no sexual contact as defined by the statute and no sexual assault.  I disagree.

19

## II. Defendant's Semen Is an "Intimate Part"

¶ 48    The statutory definition of intimate parts includes "the external genitalia." § 18-3-401(2). While "external genitalia" is not further defined, it is an accepted medical term describing the penis, scrotum and urethra, as discrete structures of the male reproductive system. My conclusion that "external genitalia" also includes semen rests on basic physiology.

¶ 49    Semen is a fluid produced in the male genitalia, some components of which are stored in the scrotum. *See, e.g.*, Irvin H. Hirsch, M.D., *Structure of the Male Reproductive System*, Merck Manual Consumer Version (July 2017), https://perma.cc/L39G-RSN5. Thus, prior to ejaculation, semen is part of the male "external genitalia."

¶ 50    At the time of ejaculation, the semen "travels through the penile urethra out the end of the glans at the tip of the penis." 70 Am. Jur. 3d *Proof of Facts* (2002). I see no reason why it ceases to be part of the male external genitalia as soon as it is excreted — necessarily by sexual arousal — at the moment of ejaculation. There may be circumstances — for example, a considerable length of time between ejaculation and the semen's eventual contact with a

victim — in which semen may not qualify as part of the man's external genitalia and intimate parts. But those are not the facts in this case. Here, defendant forced the victim to hold her hands "close" to his penis and he ejaculated directly into them. Under these circumstances, I would hold that defendant's semen was part of his external genitalia and therefore an intimate part.

¶ 51 Indeed, to interpret the statute to not include semen as an intimate part under the circumstances here leads to an absurd result that the legislature did not intend.

¶ 52 "We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result." *People v. Vinson*, 42 P.3d 86, 87 (Colo. App. 2002) (citing *People v. Gholston*, 26 P.3d 1 (Colo. App. 2000)).

¶ 53 We may reject a narrow interpretation of a statute in the rare circumstance when "the resultant absurdity is 'so gross as to shock the general moral or common sense.'" *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2006) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)); *see People v. Kailey*, 2014 CO

50, ¶ 13 ("Although we must give effect to the statute's plain and ordinary meaning, the General Assembly's intent and purpose must prevail over a literalist interpretation that leads to an absurd result." (quoting *Lagae v. Lackner*, 996 P.2d 1281, 1284 (Colo. 2000))).

¶ 54 "The evident purpose of the [sexual assault on a child statute] was to protect children under a certain age from those acts which would tend to corrupt their morals . . . because its prime object is to protect the morals of youth by punishing those committing acts having a tendency to corrupt them." *Cross v. People*, 122 Colo. 469, 472, 223 P.2d 202, 204 (1950). Clearly, the legislature intended the sexual assault on a child statute to prohibit and punish all sexual acts performed on children. *See* § 18-3-405(1); § 18-3-405.3(1), C.R.S. 2017 (precluding *any* sexual contact).

¶ 55 There can be no dispute that what defendant did here, ejaculating onto a child's hands, is a sexual act that would corrupt a child's morals. But a narrow interpretation of "intimate parts" renders this particular sexual act unpunishable as a sexual assault. This seems contrary to the intent of the legislature.

¶ 56    It also leads to absurd results.  If it is so that an "intimate part[]" is defendant's penis but not his ejaculated semen, the difference between having committed a sexual assault on a child or not in this case is reduced, literally, to a space described by a preschool-age child as "close."  Had the victim's hands, while close enough to catch defendant's semen as he ejaculated into them, accidentally touched his penis for a split second, he would have committed sexual assault on a child.  But, under a narrow definition of intimate parts, because that momentary contact did not occur, defendant did not commit sexual assault on a child.  In my view, it just cannot be that the legislature intended to attach such great consequence to such a relatively inconsequential part of a sexual act on a child.

¶ 57    And the facts in this case are not the only ones under which a narrow reading produces absurd results.  For example, a man could ejaculate directly onto any non-intimate part of a child, including the mouth, and it would not be sexual assault as long as the child did not touch his penis.  "It strikes [me] as unlikely that the General Assembly intended to draw such distinctions in enacting the sexual assault statute."  *People v. Pifer*, 2014 COA 93, ¶ 12; *cf. Woellhaf v.*

*People*, 105 P.3d 209, 212, 213 (Colo. 2005) (in the context of defining the unit of prosecution for four acts of sexual assault, supreme court included ejaculating on the victim's stomach as sexual contact under the sexual assault on a child statute).

¶ 58    I am fully aware that we must give effect to the words that the legislature chose.  But importantly, as I noted above, the term "external genitalia" — included by the legislature as an "intimate part[]" — is not itself statutorily defined.  And it is susceptible, as this case illustrates, to more than one reasonable interpretation. *See, e.g.*, *People in Interest of O.C.*, 2013 CO 56, ¶ 13-14 (stating that when a statutory term is subject to reasonable alternative interpretations, courts may consider legislative intent and other interpretive tools.).  Thus, I find support for my conclusion, that under certain circumstances "intimate parts" can include semen, from several Colorado cases which have rejected a literal reading of undefined terms in the sexual assault on a child statute.  *See People v. Sparks*, 2018 COA 1, ¶ 14 (rejecting as absurd defendant's argument that if a child initiates the touching of the defendant's intimate parts the child is not "subjected to" sexual contact as required by the sexual assault on a child statute); *Pifer*, ¶¶ 11-12

(concluding that there was sufficient evidence of sexual contact when there was a sheet between the defendant's hand and the victim's clothed vaginal area; evincing that there is no requirement that there be skin to skin contact to constitute a touching); *People v. Cook*, 197 P.3d 269 (Colo. App. 2008) (holding that evidence that the defendant intimidated the victims into touching themselves for his own sexual gratification was sexual contact by "constructive touching"); *Vinson*, 42 P.3d at 87 (holding that direct person-to-person contact is not required to constitute touching under the sexual assault on a child statute; defendant's narrow construction of the word "touch" is contrary to the legislative intent of the sexual assault on a child statute); *People v. Moore*, 877 P.2d 840, 846-48 (Colo. 1994) (concluding that the defendant could be found guilty of sexual assault on a child under a complicity theory when the defendant ordered the mother to sexually assault the twelve-year-old daughter).

¶ 59 For these reasons, because I would conclude that defendant's semen, under the circumstances here, is an "intimate part[]," I would further conclude that the evidence was sufficient to support defendant's convictions for sexual assault on a child and affirm

those convictions.  I respectfully dissent from the result to the

contrary.