The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 11, 2018

## 2018COA1

**No. 15CA0171, *People v. Sparks* — Crimes — Sexual Assault on a Child**

A division of the court of appeals concludes: (1) that the
phrase "subjects another [] to any sexual contact" in the sexual
assault on a child statute does not require the People to prove that
the defendant caused the child-victim to become "subservient or
subordinate" or to prove that the child-victim initiated the sexual
contact at the defendant's directive; (2) sufficient evidence existed to
convict based on un-objected to testimony that established the
victim's age, and it was not plain error to allow that testimony, and;
(3) the court's jury instruction about viewing the defendant's video
confession during deliberation was not an abuse of discretion, so
any error in giving that correct instruction outside the presence of
counsel, therefore, was harmless.

COLORADO COURT OF APPEALS

Court of Appeals No. 15CA0171
El Paso County District Court No. 13CR3655
Honorable Gregory R. Werner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Allen Michael Sparks,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HAWTHORNE
Dailey and Welling, JJ., concur

Announced January 11, 2018

Cynthia H. Coffman, Attorney General, Nicole D. Wiggins, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Anne T. Amicarella, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     In appealing the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child, defendant, Allen Michael Sparks, raises an issue of first impression in Colorado: When a child victim is alleged to have initiated the sexual contact with an adult defendant, does the phrase "subjects another . . . to any sexual contact" in section 18-3-405(1), C.R.S. 2017, the sexual assault on a child statute, require the People to prove that the defendant caused the victim to become "subservient or subordinate" or to prove that the child victim initiated the sexual contact at the defendant's order, request, or directive?  We answer that question "no."  For that reason and because we reject the other issues raised on appeal, we affirm the judgment of conviction.

## I.     *Facts and Procedural History*

¶ 2     Sparks attended a party at his wife's cousin's house.  Months later, the cousin's daughter (A.M.) reported that while she was at the party and Skyping on her computer, Sparks touched her breast over her clothing.  She also reported that as she was Skyping, her friend S.F. (the victim) and Sparks were behind her, and that through her computer's camera she saw the victim grabbing Sparks's groin area and making other movements.  She also

1

reported hearing heavy breathing and gasping.  At the time, A.M. was fourteen and the victim was thirteen.  The police later interviewed Sparks, and he admitted to what A.M. reported, as well as to touching the victim's groin, breast, and bottom area.  Sparks was charged with two counts of sexual assault on a child and two counts of contributing to the delinquency of a minor, one count of each for the victim and A.M.  He was convicted of one count of sexual assault on a child as to the victim.

## II.     *The Issue of First Impression is Raised in the Context of Prosecutorial Misconduct*

¶ 3     Sparks contends that the prosecutor engaged in misconduct by misstating the law and evidence during closing argument.  We disagree.

## A.     *Standard of Review*

¶ 4     We review a claim of prosecutorial misconduct by engaging in a two-step analysis.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we review whether the prosecutor's conduct was improper considering the totality of the circumstances.  Second, we determine whether the conduct warrants reversal under the applicable standard of review.  *Id.*  Sparks did not object, so we

2

review for plain error. *People v. McMinn*, 2013 COA 94, ¶ 58.

Prosecutorial misconduct constitutes plain error where it (1) is

flagrant or glaringly or tremendously improper and (2) so

undermines the trial's fundamental fairness as to cast serious

doubt on the judgment of conviction's reliability. Prosecutorial

misconduct in closing argument rarely constitutes plain error. *Id.*

### B.    *Analysis*

#### 1.    *The Prosecutor Did Not Misstate the Law*

¶ 5    Sparks contends that the prosecutor misstated the law by

telling the jury in closing argument that it did not matter that the

victim initiated the sexual contact, because, he argues, if the victim

subjected him to sexual contact, the acts did not fall under the

sexual assault statute. Specifically, Sparks argues that the words

"subjects another . . . to" in the statute required the prosecution to

prove that he caused the victim to become "subservient or

subordinate" or that the child victim initiated the sexual contact at

his "order, request, or directive." We disagree.

¶ 6    Because Sparks was charged with sexual assault on a child,

the prosecution was required to prove that he

    1. knowingly,

2. subjected another person who was not his spouse to any sexual contact, and

3. that person was less than fifteen years of age, and

4. the defendant was at least four years older than that person at the time of the commission of the act.

*See* § 18-3-405(1); *see also* COLJI-Crim. 3-4:31 (2016).

¶ 7 Sexual contact "means the knowing touching of the victim's intimate parts by the actor, *or of the actor's intimate parts by the victim*," including over the clothing, "for the purposes of sexual arousal, gratification, or abuse." § 18-3-401(4), C.R.S. 2017 (emphasis added). It is not a defense that a defendant does not know the age of a child victim. § 18-1-503.5(3), C.R.S. 2017.

¶ 8 We read these statutes together to give effect to the entire statutory scheme and give consistent and sensible effect to all its parts. *See People v. Steen*, 2014 CO 9, ¶ 9. The sexual assault statute's plain language requires the prosecution to prove that a defendant knowingly subjected another to any sexual contact. Sexual contact includes the touching of the defendant's intimate parts by the victim. § 18-3-401(4).

4

¶ 9    Sparks asserts that the words "subjects another" are understood as causing another to become subservient or subordinate.  But we conclude that in the context of the statutory scheme prohibiting sexual assault on a child, the General Assembly has given "subjects another" a broader meaning.  That meaning encompasses an adult defendant allowing a child to touch the defendant's intimate parts.  And by doing so, the defendant subjects the child to sexual contact.  We reach this conclusion for four reasons.

¶ 10    First, accepting Sparks's argument would result in making some form of force or threat by a defendant an element of the sexual assault on a child offense.  But the use of force or a threat cannot be considered an element of sexual assault on a child because the General Assembly clearly treats the use of force or threats by the defendant as a sentence enhancer, not an element, of the crime.  *See* § 18-3-405(2)(a)-(c).

¶ 11    Second, "subjects another" cannot be reasonably read to exclusively require that a defendant initiate or cause the contact, because sexual contact is statutorily defined to include the knowing touching of the defendant's intimate parts by the victim.  § 18-3-

401(4). And as to the victim touching the defendant, the statute does not contain any mention of initiation, coercion, or persuasion by the defendant. So construing the statute to require that the prosecution show some sort of coercive or persuasive act by the defendant to make the victim subservient or subordinate is contrary to the statute's plain language and would require us to add words to the statute. This we cannot do. *People v. Diaz,* 2015 CO 28, ¶ 15.

¶ 12    And we note that in other contexts, courts have held that "a person 'subjects' another . . . if he or she affirmatively acts, *participates in another's affirmative act, or omits to perform an act* which he or she is legally required to do and causes the complained-of deprivation." *Santibanez v. Holland,* No. CV 10-09086-GAF (MAN), 2012 WL 933349, at *6 (C.D. Cal. Jan. 24, 2012) (emphasis added) (citing *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978)) (construing 42 U.S.C. § 1983 (2012)).

¶ 13    Third, our General Assembly has made clear that in any unlawful sexual contact or activity between a child and an adult, the adult is the culpable actor. For example, in the context of sexual exploitation of a child, a child under eighteen years of age is

6

incapable of giving informed consent to the use of his or her body for a sexual purpose. *See* § 18-6-403, C.R.S. 2017. Thus, the law will not recognize the child as the initiator of unlawful sexual contact or activity with an adult. *See United States v. De La Cruz-Garcia,* 590 F.3d 1157, 1160 (10th Cir. 2010) (construing sections 18-3-401(4) and 18-3-405(1) and recognizing that legally nonconsensual sexual activity between an adult and a minor victim "inherently involves taking unfair or undue advantage of the victim"); *Davis v. United States,* 873 A.2d 1101, 1107 (D.C. 2005) ("As his eleven-year-old daughter was legally incapable of consenting to [defendant's] sexual advance, coercion was implicit and need not have been otherwise shown."). So construing the phrase "subjects another" as requiring the prosecution to prove conduct by a defendant that coerced or persuaded a child victim into touching the defendant's intimate parts would undermine the sexual assault on a child statutory scheme.

¶ 14     Finally, Sparks's interpretation would lead to an absurd result where a defendant could, without violating the sexual assault on a child statute, knowingly allow, by passive acceptance, a child victim to touch the defendant's intimate parts because the defendant did

not coerce or persuade the victim, even if the defendant allowed the touching to continue.  We must avoid interpretations that would lead to an absurd result.  *Doubleday v. People*, 2016 CO 3, ¶ 20.

¶ 15    Our interpretation is consistent with other jurisdictions' courts that have considered this issue.

¶ 16    In *State v. Severy*, the Maine Supreme Court interpreted the phrase "subjects another" in an unlawful sexual contact statute to include a defendant's conduct of intentionally failing to stop a child from initiating sexual contact.  8 A.3d 715, 716, 718 (Me. 2010) (quoting Me. Rev. Stat. Ann. tit. 17-A, § 255-A(1) (2016)) ("[A]n adult does 'subject' a child to sexual contact by failing to stop the child from touching the adult's genitals on multiple occasions and instead allowing the child to continue this contact.").  The statute at issue in that case reads, in part: "A person is guilty of unlawful sexual contact if the actor intentionally subjects another person to any sexual contact and . . . [t]he other person, not the actor's spouse, is in fact less than 12 years of age and the actor is at least 3 years older."  *Id.* at 718 (quoting Me. Rev. Stat. Ann. tit. 17-A, § 255-A(1)(E-1)).

¶ 17 The *Severy* court noted that "[t]he verb 'subject' is not defined by statute," and it concluded that the trial court's instruction to the jury that "'subject' could mean, among other things, 'to cause to experience,'" was consistent with a common understanding of the term. *Id.* (citing Webster's Third New International Dictionary of the English Language Unabridged 2275 (2002)). The court held as follows:

> Taking into account the language of all relevant statutes, and giving the statutory terms their common meaning, [defendant] could be found guilty if he intentionally caused the child to have contact with his genitals, for purposes of gratifying his sexual desire, by failing to act to stop the child. In other words, the jury could find him guilty if it found that, to arouse or gratify his sexual desire, [defendant] intentionally allowed the child to continue to touch his penis, instead of stopping her.

*Id.*

¶ 18 And in *State v. Traylor*, the Wisconsin Court of Appeals held that the trial court did not err in submitting to the jury a modified instruction that defined sexual contact with a child to include the defendant *allowing* the victim to touch his intimate parts. 489 N.W.2d 626, 630 (Wis. Ct. App. 1992). The defendant argued that

9

the statute required "an affirmative act and [not] mere passivity" to constitute sexual contact with a child. *Id.* (citing Wis J I—Criminal 2103). The court rejected this argument and concluded that the defendant did not have to initiate sexual contact with the child, and "[i]f the defendant *allows* the contact, that is sufficient to constitute intentional touching because it indicates that the defendant had the requisite purpose of causing sexual arousal or gratification." *Id.*

¶ 19 We conclude that the prosecutor's closing arguments did not misstate the law and did not constitute prosecutorial misconduct.

### 2. *The Prosecutor Did Not Misstate the Evidence*

¶ 20 Next, Sparks argues that the prosecutor misstated the evidence by saying A.M. saw improper sexual contact between the victim and Sparks through a computer camera while on Skype, and that Sparks knew exactly how old the victim was.

¶ 21 Prosecutors may comment on the evidence admitted at trial and the reasonable inferences that can be drawn from it. *People v. Samson*, 2012 COA 167, ¶ 31. Prosecutors may not, however, misstate the evidence. *Id.* at ¶ 32. Nor may they refer to facts not in evidence. *People v. Castillo*, 2014 COA 140M, ¶ 59 (*cert. granted* Nov. 23, 2015).

¶ 22    A.M. testified that she saw the victim touching Sparks's groin area.  While A.M. did not testify that she saw Sparks touch the victim, this was not necessary to show improper sexual contact. So, the prosecutor's statement did not misstate this evidence.

¶ 23        The prosecutor's closing comments that Sparks knew exactly the age of A.M.'s friends was also not improper.  As we discuss below, the court did not err by admitting this evidence.  In his interview with the police, Sparks said that he thought the victim was sixteen, but "heard" she was fourteen.  And Sparks is related to A.M.  Given this evidence, it was not improper for the prosecutor to infer that Sparks knew that A.M.'s friends would be her age as well.

III.    *Sufficiency of the Evidence*

¶ 24    Sparks contends that because the only evidence as to the victim's age was inadmissible, the prosecution failed to produce sufficient evidence to prove beyond a reasonable doubt that he committed sexual assault on a child.

¶ 25    We review the record to determine whether the evidence before the jury was sufficient in both quantity and quality to sustain the conviction.  *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). The prosecution has the burden of establishing a prima facie case

11

of guilt, which requires it to introduce sufficient evidence to establish guilt. *Id.* This requires that the evidence be viewed in the light most favorable to the prosecution and that it be substantial and sufficient to support the defendant's guilt beyond a reasonable doubt. *Id.*

¶ 26 A.M. and the detective both testified that the victim was under the age of fourteen at the time of the alleged crime. That evidence was admitted without objection and was sufficient for the jury to find beyond a reasonable doubt that the victim was less than fifteen years of age at the time of the crime and to convict Sparks of sexual assault on a child. Even if that evidence was arguably excludable, it was "admitted without objection and retained without a motion to strike." And as we conclude in Part IV below, it was not plain error to admit the evidence, so "the jury [was] generally free to consider it." *People v. McGrath*, 793 P.2d 664, 667 (Colo. App. 1989). Accordingly, we conclude that the evidence was sufficient.

IV. *Testimony and Statements About Victim's Age*

¶ 27 Sparks next contends that the court erred in admitting a detective's and A.M.'s testimony and his own interview statement as to the victim's age because they were hearsay and violated his

12

constitutional rights under both the Federal and Colorado Confrontation Clauses. We discern no reversible error.

## A. *Testimony and Statement*

¶ 28 The prosecutor asked A.M., who had previously testified that she was fourteen years old at the time of the offense, if the victim was the same age as her, to which she replied, "No. She is a year younger than me." The prosecutor also asked a detective if he had "determine[d] whether or not [the victim was] under 15 [years old] at the time of the offense?" The detective responded, "I did." During Sparks's interview, he admitted that he had "heard" that the victim was fourteen years old, but he had thought she was "at least" sixteen years old. The interview video was admitted into evidence. All of the above evidence was admitted without objection.

## B. *Analysis*

### 1. *Confrontation Clauses*

¶ 29 "Normally, we review a trial court's evidentiary rulings for an abuse of discretion; however, whether the admission of evidence violates the Confrontation Clause is reviewed de novo." *People v. Barry*, 2015 COA 4, ¶ 65. Where, as here, the Confrontation Clause issue is not preserved, we review for plain error. *Id.* But we require

a sufficient record to review an alleged unpreserved constitutional error. *See People v. Allman*, 2012 COA 212, ¶ 15 ("[T]he absence of a sufficient record is a common basis for refusing to review unpreserved constitutional error . . . .").

¶ 30 Our supreme court has "long interpreted Colorado's Confrontation Clause as commensurate with the federal Confrontation Clause." *Nicholls v. People*, 2017 CO 71, ¶ 31 (citing *Compan v. People*, 121 P.3d 876, 885 (Colo. 2005), *overruled by Nicholls*, 2017 CO 71); *Compan*, 121 P.3d at 885 (rejecting the petitioner's argument that the state confrontation clause protects broader rights than the Federal Confrontation Clause).

¶ 31 Considering this consistency between state and federal law, we conclude that Sparks's own prior statements in the interview video do not implicate either the Federal or Colorado Confrontation Clause. *See, e.g.*, *United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006) ("[A] party cannot seriously claim that his or her own statement should be excluded because it was not made under oath or subject to cross-examination." (quoting 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 802.05[3][d] (2d ed. 2005))); *United States v. Zizzo*, 120 F.3d 1338, 1354 (7th Cir.

1997) ("We likewise find no merit in [defendant's] suggestion that admission of the challenged evidence violated the Confrontation Clause. [Defendant's] own statements, admitted under [Fed. R. Evid.] 801(d)(2)(A), obviously pose no problem."); *United States v. Nazemian*, 948 F.2d 522, 525-26 (9th Cir. 1991).

¶ 32    As to A.M.'s testimony about the victim's age, Sparks concedes it was non-testimonial. More accurately, because A.M. was testifying at trial and available for cross-examination, her testimonial statements did not violate either the Federal or Colorado Confrontation Clause. *People v. Argomaniz-Ramirez*, 102 P.3d 1015, 1017-18 (Colo. 2004).

¶ 33    Sparks argues that the basis for the detective's knowledge of the victim's age "surely resulted from law enforcement asking" the victim and A.M. their ages. So, he asserts that the underlying basis for the detective's testimony was testimonial in nature and therefore violated the Federal and Colorado Confrontation Clauses. We construe this argument as asserting that because the victim provided her age in response to investigative questions, those statements were testimonial, *see Davis v. Washington*, 547 U.S. 813, 829 (2006), and because the victim was not available for cross-

15

examination, the detective's testimony violated Sparks's confrontation rights.

¶ 34    As the parties' briefings demonstrate, there is no record evidence from which the underlying basis for the detective's testimony can be determined.  And the lack of objection by Sparks deprived the prosecutor of any opportunity to correct the alleged error or offer a non-hearsay basis for the testimony.  Because there is not a sufficient record to allow us to review the alleged constitutional error in admitting such evidence, we decline to do so. *People v. Greer*, 262 P.3d 920, 930 (Colo. App. 2011) (Declining to review an alleged constitutional error first raised on appeal where "the record may not be complete and the trial court was not afforded an opportunity to rule."); *see United States v. Zubia-Torres*, 550 F.3d 1202, 1209-10 (10th Cir. 2008) (a lack of factual record made it impossible to determine if the defendant's substantive rights were affected); *Allman*, ¶¶ 14-16.

### 2.    *Evidentiary Rulings*

¶ 35    Sparks contends that the court abused its discretion in admitting the detective's and A.M.'s testimony and his own

interview statement as to the victim's age because the evidence was inadmissible hearsay without an exception.

¶ 36 We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. And, where, as here, the issues were not preserved, we review for plain error. *People v. Trujillo*, 2015 COA 22, ¶ 8. Plain error is error that is so obvious that a trial court should be able to avoid it without benefit of objection, and the error must so undermine the trial's fundamental fairness as to cast serious doubt on the conviction's reliability. *People v. Davis*, 2012 COA 56, ¶ 39.

a. *Sparks's Statement*

¶ 37 Sparks argues that his interview statement was inadmissible hearsay because if he "heard" that the victim was fourteen years old, he must have been told that by someone else. *See* CRE 805; *People v. Phillips*, 2012 COA 176, ¶ 101 (noting that where a statement contains multiple layers of potential hearsay, a court must analyze each layer separately to determine whether a hearsay exclusion or exception applies).

¶ 38 Because CRE 805 is virtually identical to Fed. R. Evid. 805, we consider federal cases and authorities concerning the federal rule

17

highly persuasive in interpreting and applying our own. *See, e.g.,* *Faris v. Rothenberg,* 648 P.2d 1089, 1091 n.1 (Colo. 1982) ("Fed. R. Civ. P. 63 is identical to C.R.C.P. 63. Thus, federal cases and authorities interpreting the federal rule are highly persuasive."); *United Bank of Denver Nat'l Ass'n v. Shavlik,* 189 Colo. 280, 282, 541 P.2d 317, 318 (1975) (deeming the authority and commentators on Fed. R. Civ. P. 14 to be persuasive because C.R.C.P. 14 is virtually identical).

¶ 39    Consistent with the federal rule, CRE 805 does not apply to Sparks's interview admission because as a party opponent his statement does not require firsthand knowledge to be admissible. *See Blackburn v. United Parcel Serv., Inc.,* 179 F.3d 81, 96-97 (3d Cir. 1999) ("Admissions by a party-opponent need not be based on personal knowledge to be admitted under [Fed. R. Evid.] 801(d)(2). Therefore, we need not be concerned here that the basis for [the defendant's] statement is likely hearsay . . . which would ordinarily require an additional exception to make her statements admissible. *See* Fed. R. Evid. 805." (citing *United States v. Ammar,* 714 F.2d 238, 254 (3d Cir. 1983))); *Anmar,* 714 F.2d at 254 ("[I]t is clear from the Advisory Committee Notes that the drafters intended that the

18

personal knowledge foundation requirement of [Fed. R. Evid.] 602 should . . . not [apply] to admissions (including coconspirator statements) admissible under [Fed. R. Evid.] 801(d)(2)."); *see also Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) ("[A]ny contention that [a party opponent's] letter was inadmissible under [Fed. R. Evid.] 801(d)(2) because his opinions in the letter were not rationally based on his perceptions lacks merit."); 30B Charles Alan Wright et al., *Federal Practice and Procedure* § 7043, Westlaw (database updated Sept. 2017) ("If an out-of-court speaker is not required to possess firsthand knowledge of a statement, the statement cannot be objected to simply because it relates information transmitted to the speaker by someone else."). We conclude that the trial court did not commit plain error.

### b. *A.M.'s Testimony*

¶ 40 Sparks also argues that A.M.'s testimony was inadmissible hearsay because it was "likely based on some prior statement" by the victim or someone close to the victim. But, on the other hand, A.M. may have just as likely based her testimony on her personal knowledge as a friend in the same class at school as the victim, or on the victim's reputed age at school. If that was the case, A.M.'s

19

testimony would not have been hearsay or would have fallen within an exception. *See* CRE 803(19) (providing a hearsay exception covering "[r]eputation among . . . [her] associates, or in the community, concerning a person's birth . . ."); *cf. People v. Aryee,* 2014 COA 94, ¶ 32 (there was sufficient evidence as to victim's age where part of the evidence included testimony from family friend).

¶ 41 Therefore, under the circumstances, we cannot conclude that the trial court's ruling admitting A.M.'s testimony was erroneous, much less obviously so. *See People v. Petschow,* 119 P.3d 495, 505 (Colo. App. 2004) ("Plain error assumes that the court should have intervened sua sponte because the error was so obvious."). Accordingly, we conclude that the trial court did not commit plain error.

### c. *Detective's Testimony*

¶ 42 Similarly, we cannot determine the basis for the detective's testimony, but the hearsay exceptions discussed above would likely not be available here. For example, any statements to the detective about the victim's age would more likely be testimonial. Phillips, ¶ 121 (holding that statements to a police officer were testimonial where primary purpose of investigation was to prove past events for

criminal prosecution).  And any non-testimonial records or documents about her age would be subject to the best evidence rule.  *See* CRE 1002; *Banks v. People*, 696 P.2d 293, 297 (Colo. 1985) (content of writing being directly at issue invokes best evidence rule).  Again, the record offers no help.

¶ 43    But we cannot conclude that the trial court's ruling admitting the detective's testimony was obviously erroneous.  See People v. Ujaama, 2012 COA 36, ¶ 42 ("To qualify as plain error, the error must be one that 'is so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection." (quoting People v. Taylor, 159 P.3d 730, 738 (Colo. App. 2006))).

¶ 44    Even assuming that admitting the detective's testimony was obvious error, the error would be harmless in light of A.M.'s testimony and Sparks's interview statement.  *People v. James*, 117 P.3d 91, 95 (Colo. App. 2004) ("[A]ny error was harmless in light of similar evidence, presented through other witnesses . . . .").  Such an error would not "so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction."  *Id.*  So, we conclude that the trial court did not commit plain error.

21

## V.    *Interview Video and Instruction*

¶ 45    Sparks next asserts that the court abused its discretion by instructing the jury that it could assign his interview video any weight it wanted when the court provided the video to the jury during deliberations.  Sparks argues that the court should instead have instructed the jury not to give the exhibit undue weight.  We disagree.

### A.    *Standard of Review*

¶ 46    We review the court's instruction to the jury for an abuse of discretion.  *People v. Jefferson*, 2017 CO 35, ¶ 25.  The trial court has discretion over the use of exhibits during jury deliberations, and we may not substitute our own judgment for the court's because we would have reached a different conclusion.  *Rael v. People*, 2017 CO 67, ¶ 15.  We will not disturb the court's refusal to exclude or limit the use of an exhibit unless its decision was manifestly arbitrary, unreasonable, or unfair.  *Id.*

### B.    *Applicable Law*

¶ 47    A trial court has an "obligation, at least where prompted to do so by a party, to exercise its discretion to guard . . . against the risk that testimonial exhibits will be given undue weight or emphasis."

22

*Carter v. People*, 2017 CO 59M, ¶ 17 (citing *Frasco v. People*, 165 P.3d 701, 704 (Colo. 2007)). And "the trial court must ultimately retain discretionary control over all jury exhibits allowed to go to the jury." *Frasco*, 165 P.3d at 705.

¶ 48 Under *DeBella v. People*, trial courts are required to assess any possible undue prejudice before allowing juries access to videos of testimonial out-of-court statements of child victims during deliberation. 233 P.3d 664, 668 (Colo. 2010).

¶ 49 But the use of a defendant's out-of-court statement is analyzed under a different framework than that prescribed by *DeBella*. *See Rael*, ¶ 35 ("Applying the foregoing principles here, we conclude that the concerns that motivated our decision in *DeBella* . . . do not apply to a defendant's own out-of-court statements.").

¶ 50 A defendant's out-of-court statement "offered against [him] ha[s] . . . never been considered primarily testimonial in nature"; its value is "primarily as demonstrative evidence of conduct on his part that is contradictory of a position he takes at trial." *Carter*, ¶¶ 18, 21. Use of this evidence "does not implicate the same danger of undue emphasis inherent in permitting the jury access to . . .

23

testimonial evidence" because it has additional probative value "for reasons more related to the adversary process than any narrative or testimonial value." *Id.* at ¶ 21.

¶ 51 "[H]owever, trial courts nonetheless retain discretionary control over jury access to such exhibits." *Rael,* ¶ 35 (first citing *Carter,* ¶ 22; then citing *Frasco,* 165 P.3d at 704). While a court may find grounds to restrict the jury's access to a defendant's interview under certain circumstances, "they would not typically be the same reasons that might lead it to caution the jury concerning the use of, or limit its access to, testimonial exhibits." *Carter,* ¶ 22.

### C.    *Analysis*

¶ 52 The trial court instructed the jury on how to view Sparks's interview video during deliberations:

> You have requested certain video or audio evidence. You may listen to the video/audio recording no more than three times. Each time you listen to it, you must listen to it all the way through. You may not rewind or fast forward the recording. You should consider all of the evidence in the case and determine what weight, if any, should be given to any particular piece of evidence.

¶ 53 Sparks argues that this "effectively instructed the jury [that] it could give the [video] all of the weight it wanted," which is contrary

24

to *DeBella*'s precaution against undue weight.  We reject this argument for three reasons.

¶ 54    First, the court did not instruct the jury to give Sparks's statements all of the weight it wanted.  Second, our supreme court has made clear as to a defendant's out-of-court statements that "no special protections against undue emphasis are required and the jury is entitled to unrestricted access . . . ."  *Rael*, ¶ 32.  The court was not obliged under *DeBella* to specifically admonish the jury not to give the evidence undue weight.  And third, the court appropriately exercised its discretion by providing specific instructions for the jury to follow in viewing the evidence.

¶ 55    But, Sparks further argues that the precise reason the court should have instructed the jury not to give the video unfair weight was that, unlike the DVD of Sparks's out-of-court statements,[1] a transcript of other testimony that had been subjected to cross-examination was not available to the jury during its deliberations.  We also reject this argument.

_____

[1] Sparks notes that he was "manipulated with false information" in his interview, but he does not argue that his interview statements were coerced and involuntary, so we do not consider that issue.

¶ 56    The court specifically instructed the jury to view the video in its entirety, to not rewind or fast forward through it, and to view it no more than three times. And again, specific instructions to control for undue weight are not required for a defendant's out-of-court statements. *Id.*

¶ 57    The trial court did not abuse its discretion in giving the instruction to the jury.

## VI.    *Effective Assistance of Counsel*

¶ 58    Sparks contends that the trial court denied him his constitutional right to effective assistance of counsel by providing his interview video to the jury during deliberations without notifying his counsel. We agree but conclude the error was harmless beyond a reasonable doubt.

### A.    *Standard of Review*

¶ 59    The parties agree that we review the possible violation of Sparks's constitutional right to effective assistance of counsel de novo. Sparks contends that this issue was preserved and we should apply a harmless beyond a reasonable doubt review. The People disagree that this issue was preserved and argue we should review for plain error.

26

¶ 60    We need not address this issue because we conclude that even under a harmless beyond a reasonable doubt standard, the error is harmless. *See People v. Mollaun*, 194 P.3d 411, 415 (Colo. App. 2008).

## B.    *Analysis*

¶ 61    "The right to counsel exists at every critical stage of a criminal proceeding." *Key v. People*, 865 P.2d 822, 825 (Colo. 1994); *see* U.S. Const. amend. VI; Colo. Const. art. II, § 16.  A court's discussion with the jurors is a critical stage in a criminal proceeding. *People v. Guzman-Rincon*, 2015 COA 166M, ¶ 20.  "It is therefore constitutional error for a trial judge to respond to an inquiry from a jury without first making reasonable efforts to obtain the presence of the defendant's counsel." *Key*, 865 P.2d at 825 (quoting *Leonardo v. People*, 728 P.2d 1252, 1257 (Colo. 1986)).

¶ 62    The trial court erred in submitting Sparks's interview video to the jury without notifying his counsel.  But if a court properly responds to a jury's question during deliberations, its failure to have previously secured defense counsel's presence is harmless beyond a reasonable doubt. *People v. Isom*, 140 P.3d 100, 104-05 (Colo. App. 2005) (citing *People v. Dunlap*, 124 P.3d 780 (Colo. App.

27

2004)). We have concluded above that the court properly responded to the jury's question and did not abuse its discretion in providing Sparks's interview video to the jury with an appropriate instruction.

¶ 63 We also note that there is no indication that counsel's presence would have made any difference. When the court first notified the parties' counsel that it anticipated that the jury would request Sparks's interview video and that it would give a *DeBella* instruction to the jury, defense counsel did not object. And after the jury returned its verdict, defense counsel inquired whether the court had provided the video to the jury. When the court responded that it had and had read the instruction it gave, counsel did not object: "Just so I wanted to be clear for the record . . . counsel wasn't informed of the request to view the video." *See Isom*, 140 P.3d at 105 ("[T]here is no indication that the presence of counsel would have altered the court's decision.").

¶ 64 We therefore conclude that the court's error in not obtaining defense counsel's presence was harmless beyond a reasonable doubt.

## VII. *Conclusion*

¶ 65 We affirm the trial court's judgment of conviction.

28

JUDGE DAILEY and JUDGE WELLING concur.