23CA0221 Peo v McMurray 12-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0221
City and County of Broomfield District Court No. 21CR68
Honorable Sean Finn, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Anthony Douglas McMurray,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE LIPINSKY
Dunn and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

Philip J. Weiser, Attorney General, Trina K. Kissel, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kevin M. Whitfield, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1        Anthony Douglas McMurray appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual exploitation of a child.  We affirm McMurray's conviction.

## I.        Background

¶ 2        A reasonable jury could have found the following facts based on the evidence introduced at trial.

¶ 3        K.D., who was seventeen at the time, met Ever Berumen through social media.  She and Berumen arranged to meet in person for the first time one night in February 2021.  That night, Berumen asked two of his friends, including McMurray, to pick up K.D. at her home.  While in the car, McMurray texted K.D. to ask whether she was a high school senior, what she did for fun, and if she drank or smoked.  K.D. responded by text that she was a junior, she liked to read, and she smoked but was not a drinker. K.D. and McMurray met Berumen at a fast food restaurant, and the three of them drove to Berumen's apartment.  After a few hours, Berumen and K.D. went into the bedroom while McMurray was in another room.  K.D. and Berumen engaged in consensual sex.  After having sex with K.D., Berumen invited McMurray into the bedroom, where McMurray also had sex with K.D.  During the encounter,

1

Berumen video recorded McMurray and K.D. on his phone. Berumen told McMurray to "put on a show" for the video.

¶ 4 K.D. got dressed and Berumen called an Uber to drive her home. Once home, K.D. told her brother and mother that she had been sexually assaulted, and her family called the police. Shortly afterwards, K.D.'s brother sent McMurray an accusatory text message. A few hours later, K.D. reported the assault to a police officer and showed him the text messages that McMurray had sent her while they were driving to meet up with Berumen.

¶ 5 The police detained McMurray, questioned him, and seized his phone. During his interview with a detective, McMurray said that he had engaged in sex with K.D. at Berumen's apartment, Berumen video recorded K.D. and McMurray having sex, Berumen texted the video to McMurray, and the video was still stored on McMurray's phone. In addition, McMurray consented to a forensic download of his phone. The prosecution charged McMurray with one count of sexual assault – victim incapable of appraising the nature of the victim's conduct and one count of sexual exploitation of a child. The jury acquitted him of sexual assault but convicted him of sexual exploitation of a child.

¶ 6     In this appeal, McMurray contends that (1) the prosecution failed to introduce sufficient evidence that he possessed or controlled sexually exploitative material; (2) section 18-6-403(3)(b.5), C.R.S. 2025 (the sexual exploitation statute), violates Colorado's guarantee to equal protection of the laws; and (3) the court reversibly erred by allowing the prosecutor to engage in misconduct in the form of five improper statements during closing argument.

## II.     Analysis

### A.     Sufficiency of the Evidence

¶ 7     McMurray contends that "the prosecution's evidence [was] legally insufficient" to show that he "possessed or controlled the video" of sexually exploitative material.  We disagree.

#### 1.     Sexual Exploitation of a Child

¶ 8     A person violates the sexual exploitation statute by "knowingly . . . [a]ccess[ing] with the intent to view, view[ing], possess[ing], or control[ling] sexually exploitative material for any purpose."  § 18-6-403(3)(b.5).  "Sexually exploitative material" includes "video . . . that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct."

§ 18-6-403(2)(j)(I).  A "[c]hild" is "a person who is less than eighteen years of age."  § 18-6-403(2)(a).

¶ 9    A "minimum requirement" for criminal liability is the "performance . . . of conduct which includes a voluntary act." § 18-1-502, C.R.S. 2025.  Possession is a voluntary act. § 18-1-501(9), C.R.S. 2025.  One "possess[es]" property if "the actor was aware of his physical possession or control thereof for a sufficient period to have been able to terminate it."  *Id.*

### 2.    Additional Facts

¶ 10    At trial, the jury viewed a video recording of the detective's interview of McMurray, in which McMurray admitted that Berumen had sent him the video via text message.

¶ 11    The detective asked, "What did [Berumen] take a video with?" McMurray responded, "His phone . . . .  [I]t's on the phone.  Both our phones."  The detective asked, "Is it still on there?  Both your phones?"  McMurray replied, "[Berumen] took it on his phone.  He probably deleted it, *but it's on my phone for sure.  I didn't delete nothing. . . .*  But it's on my phone."  (Emphasis added.)  McMurray said that Berumen sent him the video "through text."

4

¶ 12    McMurray told the detective, "I have the video on my phone, but it's not saved on my phone, but it's on the messages."

¶ 13    The forensic download of McMurray's phone corroborated his statements about when and how he received the video. The download showed that, a few hours after McMurray's encounter with K.D., at 2:33 a.m., Berumen sent McMurray a text containing the video showing McMurray having sex with K.D. McMurray's phone logged a "read" receipt indicating that the text message was read at 2:39 a.m. At no point during the interview did McMurray expressly say that he had watched the video, although several times he described what the video would show. For example, he told the detective:

> *I think in the video you're going to be able to see* — [describing sex with K.D.] — [Berumen] already came in with the flash. *So, you're going to see it clearly.* So I did that for about like — ten, twenty sec — *I think the video will be like forty seconds, thirty seconds, something like that.*

(Emphasis added.)

¶ 14    After asking McMurray if he or Berumen had washed any clothing or sheets in the apartment following their encounters with K.D., McMurray responded that they had not and that "[i]t's on the

5

video, too, *you're going to see the same sheets.*"  (Emphasis added.)  The detective then informed McMurray that K.D. told the police "she [was] going in and out of consciousness at the apartment while you guys [were] having sex with her."  McMurray responded, "No, that's a lie.  *The video is going to show you she was wide awake.*"  (Emphasis added.)

### 3.    Standard of Review and Applicable Law

¶ 15    "We review the record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain a defendant's conviction."  *McCoy v. People*, 2019 CO 44, ¶ 63, 442 P.3d 379, 392.

¶ 16    "The prosecution has the burden of establishing a prima facie case of guilt through the introduction of sufficient evidence."  *Id.*  "To determine whether the prosecution presented sufficient evidence to support a conviction," we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt."  *People v. Donald*, 2020 CO 24, ¶ 18, 461 P.3d 4, 7 (quoting *Clark v.*

6

*People*, 232 P.3d 1287, 1291 (Colo. 2010)). "It does not matter that we might have reached a different conclusion were we the triers of fact." *Gorostieta v. People*, 2022 CO 41, ¶ 17, 516 P.3d 902, 905.

### 4. The Evidence Was Sufficient to Support McMurray's Conviction for Sexual Exploitation of a Child

¶ 17    McMurray contends he did not "possess" or "control" the video because he did not solicit, intentionally receive, download, or view it. However, section 18-1-501(9) does not say that a person possesses property only if the person solicited, intentionally received, downloaded, or viewed it. *See also* Black's Law Dictionary 1407 (12th ed. 2024) (defining "possess" as "[t]o have in one's actual control; to have possession of"); *id.* at 1408 (defining, as relevant here, "possession" as "[t]he fact of having or holding property in one's power; the exercise of dominion over property")

¶ 18    Because section 18-1-501(9) does not require proof of solicitation, intentional receipt, downloading, or viewing, we decline to read those additional actions into the statute. *See People in Interest of T.B.*, 2019 CO 53, ¶ 53, 445 P.3d 1049, 1056 (declining to read limitations into section 18-6-403 that do not appear in the statute); *see also* § 2-4-101, C.R.S. 2025 ("Words and phrases [in a

statute] shall be read in context and construed according to the rules of grammar and common usage.").  Unlike the General Assembly, courts have no authority to rewrite statutes.  *People v. Rau*, 2022 CO 3, ¶ 34, 501 P.3d 803, 813.

¶ 19    The cases that McMurray cites in support of his reading of section 18-1-501(9) merely demonstrate that soliciting, intentionally receiving, or downloading a sexually exploitative video *may* be *evidence* of possession, but they do not hold that these actions are *required* to establish possession.  *See Fabiano v. Armstrong*, 141 P.3d 907, 910 (Colo. App. 2006) ("[E]vidence that a person has knowingly received prohibited material in an e-mail *could* be accepted as proof that the person knowingly possessed the material . . . ." (emphasis added)); *Marsh v. People*, 2017 CO 10M, ¶ 28, 389 P.3d 100, 107 ("[K]nowingly seeking out and viewing child pornography . . . *constitutes* knowingly possessing or controlling it." (emphasis added)); *Marsh*, ¶ 26, 389 P.3d at 107 (expressly rejecting "limit[ing] the definition of possession to include only those instances where the defendant has saved images" when the evidence showed that the defendant viewed the images online).  Similarly, *Marsh* holds that the presence of automatically cached

8

images on a device "*can* constitute *evidence* that the defendant knowingly possessed the images." *Marsh*, ¶¶ 28-29, 389 P.3d at 107 (emphasis added).

¶ 20     In addition, McMurray argues that the evidence does not establish that he possessed the video because it "does not indicate" that he viewed it. The People counter that "[t]he prosecution did not have to prove that McMurray 'viewed' the video because he was charged with possessing or controlling it." We agree with the People.

¶ 21     The sexual exploitation statute criminalizes "view[ing], possess[ing], *or* control[ling]" the material. § 18-6-403(3)(b.5) (emphasis added). "[W]hen the word 'or' is used in a statute, it is presumed to be used in the disjunctive sense, unless legislative intent is clearly to the contrary." *People v. Montoya*, 2025 COA 89, ¶ 51, ___ P.3d ___, ___ (quoting *Armintrout v. People*, 864 P.2d 576, 581 (Colo. 1993)). For example, the use of "the disjunctive 'or'" in the failure to leave the premises statute means there are two ways to commit the offense. *Id.* at ¶¶ 50-51, ___ P.3d at ___; *see* § 18-9-119(2), C.R.S. 2025 ("Any person who barricades or refuses police entry to any premises or property through use of or

9

threatened use of force and who knowingly refuses *or* fails to leave any premises or property upon being requested to do so by a peace officer . . . commits a class 2 misdemeanor." (emphasis added)).

¶ 22    Because we assume the General Assembly intended each word in the sexual exploitation statute to have a distinct meaning, *Marsh*, ¶ 22, 389 P.3d at 105, a person can commit the crime of sexual exploitation of a child by possessing *or* controlling the sexually exploitative material, even if the person never viewed it, *see* §§ 18-6-403(3)(b.5), 18-1-501(9).

¶ 23    For this reason, the prosecution was not required to prove that McMurray viewed the video to prove that he possessed or controlled it in violation of section 18-6-403(3)(b.5).  *See People v. Edwards*, 520 P.2d 1041, 1042 (Colo. 1974) ("[E]vidence of any of the alternative ways that a crime can be committed will support a general verdict." (quoting *Hernandez v. People*, 396 P.2d 952, 955 (Colo. 1964)).

¶ 24    Even though the prosecution was not required to prove that McMurray viewed the video, evidence that he had viewed it was relevant to whether he possessed or controlled it.  *See Marsh*, ¶ 28, 389 P.3d at 107.  Although McMurray maintains that "the evidence

10

does not indicate" that he watched the video, we are required to view the evidence in the light most favorable to the prosecution. *See Donald*, ¶ 18, 461 P.3d at 7.

¶ 25    The jury could have reasonably found from McMurray's statements during the interview that he viewed the video. McMurray said during the interview that "you're going to see it clearly"; "[i]t's on the video too, you're going to see the same sheets"; and "[t]he video is going to show you she was wide awake."  The jury could have reasonably interpreted these statements to mean that McMurray viewed the video and was not merely recalling what Berumen recorded on the video.  More significantly, McMurray's statements during the interview demonstrate that he knew the video was accessible on his phone, it remained on his phone when the police seized it, and he "didn't delete" it.  McMurray argues that his conduct was not a "voluntary act" because he possessed the video for "less than twenty-four hours" before he "reported it to police," and, therefore, he did not possess it "for a sufficient period of time such that the possession could have been terminated."  In the same breath, McMurray argues he did not commit a voluntary act because he *did* "terminat[e] possession within twenty-four

11

hours . . . willfully" by removing his phone's password before police seized his phone. McMurray concedes that "he technically could have deleted the message in a few seconds" but that he "did not delete it only to report it to police," which is a "reasonable . . . purpose of possession." We are unpersuaded.

¶ 26　Significantly, the sexual exploitation of a child statute criminalizes the possession of sexually exploitative material for any time period and "for any purpose." § 18-6-403(3)(b.5).

¶ 27　In *Fabiano*, the division held that the Colorado statutes do not "contain any requirement that the prohibited material be retained for any minimum period of time." 141 P.3d at 910. *Fabiano* acknowledges that, unlike in this case, the owner of a device may not be deemed to possess an unsolicited message containing "previously unknown material" so long as the owner "*immediately delete*[s]" the material from the owner's device. *Id.* at 909 (emphasis added).

¶ 28　McMurray does not dispute that he knew the contents of the video; rather, he argues that he retained the video on the phone for the sole purpose of reporting it to police or that reporting it to the detective within twenty-four hours of receiving it negated his

12

possession of the video.  In support of this argument, he cites section 18-7-109(2)(b), C.R.S. 2025, which allows *juveniles* to wait seventy-two hours before reporting their possession of a private intimate image to police — but McMurray was not a juvenile at the time Berumen sent him the video.

¶ 29    The jury could have reasonably disbelieved McMurray's argument that he merely preserved the video so he could turn it over to the police.  The record shows that McMurray did not voluntarily contact the police to report the video; he still had the video in his text messages when the police brought him in for questioning, nearly twenty-four hours after Berumen sent him the video; the officers seized McMurray's phone before the detective interviewed him; and McMurray knowingly retained the video on his phone the entire time.  McMurray had ample time to delete the video before his arrest, but he chose not to do so.  In any event, under section 18-6-403(3)(b.5), McMurray did not need to possess or control the video for a minimum time period to commit the offense; there was no grace period within which he could delete the video without culpability after becoming aware of its contents.  *See*

*Fabiano*, 141 P.3d at 910. And under the statute, his motives for not deleting the video are immaterial. *See* 18-6-403(3)(b.5).

¶ 30 We conclude that the evidence was sufficient in both quantity and quality such that the jury reasonably could have found that McMurray possessed or controlled sexually exploitative material in violation of section 18-6-403(3)(b.5).

## B. Equal Protection

¶ 31 McMurray contends that the sexual exploitation statute violates the guarantee of equal protection under the Colorado Constitution, Colo. Const. art. II, § 25, because, while the sexual exploitation statute and section 18-3-405.6, C.R.S. 2025 (the sexual gratification statute), proscribe similar conduct, the former punishes such conduct more harshly than does the latter. McMurray presents both as-applied and facial challenges to the sexual exploitation of a child statute. We need not reach the merits of McMurray's equal protection argument, however, because he did not preserve it in the trial court, and he fails to present a plain error argument on appeal.

¶ 32 In his opening brief, McMurray does not tell us — as C.A.R. 28(a)(7)(A) requires — the standard of review applicable to

his equal protection argument "with citation to authority, whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled."

¶ 33     McMurray belatedly concedes in his reply brief that he did not preserve the argument. He asserts, however, that, even though he did not preserve the argument, we must review it under the de novo standard. He is incorrect.

### 1.     Standard of Review and Applicable Law

¶ 34     The parties agree the issue is unpreserved but dispute what standard of review applies.

¶ 35     We have the discretion to address an unpreserved constitutional claim "when we believe that doing so would best serve the goals of efficiency and judicial economy." *Fuentes-Espinoza v. People*, 2017 CO 98, ¶ 19, 408 P.3d 445, 448; *People v. Mountjoy*, 2016 COA 86, ¶¶ 35, 39-40, 431 P.3d 631, 639 (applying this principle to as-applied and facial challenges), *aff'd on other grounds*, 2018 CO 92M, 430 P.3d 389.

¶ 36     And we apply the plain error standard when we chose to exercise our discretion to review an unpreserved constitutional argument. *See People v. Price*, 2023 COA 96, ¶ 47, 542 P.3d 268,

279 ("[W]e only reverse unpreserved constitutional errors for plain error."). But we only review plain error arguments that an appellant presents to us. *See Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) (noting "the basic principle of appellate jurisprudence that arguments not advanced on appeal are generally deemed waived"). To do otherwise would violate the party presentation principle. *See Compos v. People*, 2021 CO 19, ¶ 35, 484 P.3d 159, 165 (explaining that, under the party presentation principle, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter" (quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)).

¶ 37    Plain error review requires a determination of "whether (1) there was an error, (2) the error was 'plain,' or clear and obvious, and (3) the error was substantial, meaning that it so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *People v. Allman*, 2012 COA 212, ¶ 17, 321 P.3d 557, 564. An error is obvious if it was "so clear-cut" that "a trial judge should [have been] able to avoid it without benefit of objection," *People v. Crabtree*, 2024 CO 40M, ¶ 42, 550 P.3d 656, 667 (quoting *Romero v. People*,

16

2017 CO 37, ¶ 6, 393 P.3d 973, 976), because it "contravene[d] a clear statutory command, a well-settled legal principle, or established Colorado case law," *id.* McMurray bears the burden of establishing that an error occurred, *see People v. Conyac*, 2014 COA 8M, ¶ 54, 361 P.3d 1005, 1020, and that it was obvious at the time the court made it, *see Crabtree*, ¶ 73, 550 P.3d at 672.

### 2. McMurray's Equal Protection Challenge to the Sexual Exploitation of a Child Statute Fails in the Absence of a Plain Error Argument

¶ 38 McMurray does not argue that the court's alleged constitutional error was plain, much less cite any Colorado statutory or prior case law that would have alerted the trial court that his conviction violated the guarantee of equal protection. *See Crabtree*, ¶ 42, 550 P.3d at 667 ("[W]hen Colorado statutory law or case law would not have alerted the trial judge to an unobjected-to error, the error cannot be deemed plain."). In any event, we are unaware of any statutory or prior case law that would have alerted the trial court that McMurray's conviction for sexual exploitation of a child violated the guarantee of equal protection.

¶ 39 In sum, even if we were to exercise our discretion to review McMurray's unpreserved constitutional claim, his contention would

still fail because McMurray waived his equal protection argument by failing to present a plain error argument in this appeal. *See Moody*, 159 P.3d at 614.

### C. Prosecutorial Misconduct

¶ 40    McMurray contends that the prosecutor engaged in misconduct five times during closing arguments. We disagree.

#### 1. Standard of Review and Applicable Law

¶ 41    When reviewing prosecutorial misconduct arguments, "we engage in a two-step process where '[e]ach step is analytically independent of the other.'" *People v. Ray*, 2025 CO 42M, ¶ 127, 575 P.3d 400, 435 (quoting *People v. Robinson*, 2019 CO 102, ¶ 18, 454 P.3d 229, 233). "*First*, we must determine whether misconduct occurred; that is, whether the prosecution's conduct was improper 'in the context of the argument as a whole and in light of the evidence before the jury.'" *Id.* at ¶ 128, 575 P.3d at 435 (quoting *People v. Strock*, 252 P.3d 1148, 1153 (Colo. App. 2010)). "Determining whether a prosecutor's actions constitute misconduct 'is generally a matter left to the trial court's discretion.'" *Id.* (quoting *People v. Snider*, 2021 COA 19, ¶ 31, 491 P.3d 423, 431). "[W]e review the record for an abuse of that discretion." *Id.*

¶ 42    While we acknowledge that "[a] prosecutor, while free to strike hard blows, is not at liberty to strike foul ones," *People v. Yachik*, 2020 COA 100, ¶ 58, 469 P.3d 582, 592 (quoting *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005)), we remain mindful that "[p]rosecutorial misconduct in closing argument rarely constitutes plain error," *People v. Sparks*, 2018 COA 1, ¶ 4, 434 P.3d 713, 717.

¶ 43    "*Second*, if we determine the prosecution's comments were improper, we then consider whether that misconduct warrants reversal under the appropriate standard." *Ray*, ¶ 130, 575 P.3d at 435. We consider the "severity and frequency of the misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction." *Id.* (quoting *Strock*, 252 P.3d at 1153).

¶ 44    If the appellant "fail[ed] to object to the alleged misconduct at trial, we review for plain error." *Id.* at ¶ 131, 575 P.3d at 435. "Prosecutorial misconduct constitutes plain error where it (1) is flagrant or glaringly or tremendously improper and (2) so undermines the trial's fundamental fairness as to cast serious

19

doubt on the judgment of conviction's reliability."  *Sparks*, ¶ 4, 434
P.3d at 717.

¶ 45    But we review for harmlessness if the appellant preserved the
error through an objection.  *Ray,* ¶ 131, 575 P.3d at 435.
Prosecutorial misconduct is harmless if there is no "reasonable
probability that any error by the trial court contributed to [the
defendant's] conviction."  *People v. Monroe*, 2020 CO 67, ¶ 17, 468
P.3d 1273, 1276.  When reviewing prosecutorial misconduct for
harmlessness, we must evaluate "the likelihood of prejudice . . . in
the totality of the circumstances, on a case-by-case basis."  *Crider
v. People,* 186 P.3d 39, 43 (Colo. 2008).

2.    The Court Did Not Plainly Err by Allowing the
Alleged Prosecutorial Misconduct to Which
McMurray Did Not Object at Trial

McMurray raises four prosecutorial misconduct arguments for
the first time on appeal: On three occasions, the prosecutor
allegedly improperly referred to facts not in evidence and did not
draw reasonable inferences from the evidence, and on a fourth
occasion, the prosecutor allegedly wrongfully asked the jury to do
justice for a sympathetic victim.  We conclude that the trial court
did not err — much less plainly err — by permitting the prosecutor

20

to present these arguments. (We note that certain of the prosecutor's challenged statements appear to relate to the sexual assault count, on which the jury acquitted McMurray, rather than the sexual exploitation count. Because the People do not note this distinction, however, we review all the instances of alleged misconduct on the merits.)

### a. The Prosecutor Did Not Improperly Refer to Facts Not in Evidence

¶ 46 McMurray asserts that, three times during closing argument, the prosecutor improperly "referred to facts not in evidence to paint an inaccurate picture to the jury of McMurray's actions and intentions." We disagree.

¶ 47 In those three instances, the prosecutor said:

- McMurray "didn't care about [K.D.'s] name."

- "[H]e took what he wanted and he watched the video afterwards."

- K.D. "was a sexual object" to McMurray. She was "a conquest" to him. "She is nameless. She is faceless. She is the entertainment and he wanted her to put on a show."

21

¶ 48     Although "it is not proper for a prosecutor to refer to facts not in evidence," *People v. Walters*, 148 P.3d 331, 334 (Colo. App. 2006), "[f]inal argument may properly include the facts in evidence and any reasonable inferences drawn therefrom," *Domingo-Gomez,*125 P.3d at 1048.  "[A] prosecutor has wide latitude in the language and presentation style used to obtain justice."  *Id.*

¶ 49     First, McMurray contends that the prosecutor "was not discussing evidence" when she said that "[McMurray] didn't care about [K.D.'s] name."  The evidence refutes this argument.

¶ 50     On the video recording of the detective's interview with McMurray — which, as noted above, the jury viewed and the court admitted into evidence — McMurray said, "I don't even remember her name.  She said her name was something."  The detective asked, "If I said her name was [K.D.] would that sound right?"  To which McMurray replied, "Yeah, yeah, that's probably her name, yeah."  McMurray only referred to K.D. by name once during the nearly hour-long interview during which McMurray and the detective repeatedly referred to her.

¶ 51     The prosecutor could reasonably draw the inference that McMurray did not care about K.D.'s name because he had forgotten

22

it within twenty-four hours of his encounter with her. Thus, we conclude the prosecutor's reference to K.D.'s name was not improper.

¶ 52 Second, McMurray contends that the prosecutor "referenced no evidence" in support of her assertion that McMurray "took what he wanted and watched the video afterwards." Again, the evidence refutes this argument.

¶ 53 The jury could have reasonably found that McMurray watched the video from at least three pieces of evidence: his descriptions of the content of the video during his interview with the detective, the "read" receipt on McMurray's phone, and the forensic download from the phone. Accordingly, we conclude that the prosecutor properly drew from this evidence the inference that McMurray watched the video. (In any event, as explained above, *supra* Part II.A.4, the prosecutor was not required to prove that McMurray watched the video to obtain a conviction under the sexual exploitation statute.)

¶ 54 Third, McMurray contends that the evidence did not support the prosecutor's assertion that "[K.D.] was a sexual object" and a "conquest" to McMurray and that, to him, she was "nameless,"

23

"faceless," and "the entertainment[,] and he wanted her to put on a show." As with the first two allegedly improper arguments, the evidence supports these statements.

¶ 55 During McMurray's interview, the detective asked, "Was [Berumen] concerned about like . . . we shouldn't have done that?" McMurray replied, "No, we were not thinking nothing like that." The detective followed up, "Not anything — she was gone. You guys were moving on with your day?" McMurray answered, "She was gone, and we didn't think — Yeah. . . . [I]t was all normal. *We didn't think nothing of it. I didn't think nothing of the girl . . . .*" (Emphasis added.) McMurray admitted that "the only time [he] even thought about the girl" was when her brother sent him accusatory text messages after she returned home. Accordingly, we conclude that the evidence supported the prosecutor's statements regarding McMurray's indifference to K.D.

¶ 56 In sum, we hold that the prosecutor's first three challenged statements were reasonable inferences from facts in the record and, therefore, were not improper.

24

### b. The Prosecutor Did Not Urge the Jury to Do Justice for a Sympathetic Victim

¶ 57    In his fourth unpreserved prosecutorial misconduct argument, McMurray asserts that the prosecutor improperly "urged the jurors to find McMurray guilty to do justice for K.D. as a sympathetic victim." We discern no error.

¶ 58    This argument is premised on the prosecutor's statement,

> I am asking you, the jury to find that [K.D.] was a girl that was brave enough to sit on this stand and tell a room full of adults, a room full of strangers, the most painstaking details of being sexually assaulted by [McMurray]. [K.D.] is the victim in this case because [McMurray] made her one. The defendant is guilty.

¶ 59    "A prosecutor should not encourage 'the jury to depart from its duty to decide the case on the evidence [by] asking the jury to memorialize or pay tribute to the victim by its verdict.'" *People v. Marko*, 2015 COA 139, ¶ 221, 434 P.3d 618, 660 (quoting *People v. Dunlap*, 975 P.2d 723, 759 (Colo. 1999)), *aff'd on other grounds*, 2018 CO 97, 432 P.3d 607. Similarly, a prosecutor engages in misconduct by "pressur[ing] jurors by suggesting that guilty verdicts are necessary to do justice for a sympathetic victim." *Id.* (quoting *People v. McBride*, 228 P.3d 216, 223 (Colo. App. 2009)).

¶ 60    First, assuming, without deciding, that the prosecutor's statements were improper, we perceive no plain error. Other divisions have not found plain error when the prosecutor

- expressly asked the jury to vindicate the victims, *People in Interest of J.R.*, 2021 COA 81, ¶ 47, 495 P.3d 346, 354 (discerning harmless error when the prosecutor asked the jury to "'vindicate' the victims by holding [the defendant] accountable"); *People v. Wallace*, 97 P.3d 262, 269 (Colo. App. 2004) (asking the jury to "hold [the defendant] accountable for the behavior that he did and the cries that he instilled in these children");

- misstated that the defendant had lost the presumption of innocence, *McBride*, 228 P.3d at 223-24 ("That presumption of innocence that we had when we started this case is gone.");

- appealed to the jurors' passions or prejudices, *People v. Salazar*, 2023 COA 102, ¶ 48, 542 P.3d 1209, 1220 ("Don't make these boys wait any longer before you tell them that they are believed and before you convict this

26

man of each and every thing that he is charged with.");
and

- pressured jurors by suggesting that guilty verdicts were necessary to do justice for a sympathetic victim, *Conyac*, ¶¶ 146-147, 361 P.3d at 1030 ("[T]he prosecutor told the jury that 'my job is done. The judge's job is done. You are now the justice system. Go back into that jury room, use your common sense and find justice. Find justice for [the victim].").

¶ 61    Similarly, it was not obvious that, under Colorado law, the prosecutor's reference to K.D.'s bravery was error. *See Salazar*, ¶ 46, 542 P.3d at 1220; *see also State v. Williams*, 926 A.2d 7, 23 (Conn. App. Ct. 2007) (concluding that the prosecutor did not engage in misconduct by urging the jury to envision the victim as an eleven-year-old sexual assault victim and not as the "brave poised young woman[] who testified in this court"). In addition, the prosecutor did not improperly admonish the jury to "do justice" for a sympathetic victim. *People v. Buckner*, 2022 COA 14, ¶¶ 41-44, 509 P.3d 452, 461 (The trial court plainly erred by permitting the prosecutor to argue, "[The victim's] day of justice is a long time

27

coming. That's today. Hold [the defendant] accountable for what he did to that girl that night."). Further, McMurray does not point to any Colorado case holding that a prosecutor engages in misconduct by commenting on the victim's disclosure of the intimate details of a sexual assault to a group of strangers.

¶ 62 Thus, we hold that the court did not plainly err by permitting the prosecutor to refer to K.D.'s bravery because such argument was not "flagrant or glaringly or tremendously improper," nor did it "so undermine[] the trial's fundamental fairness as to cast serious doubt on the judgment of conviction's reliability." *Sparks*, ¶ 4, 434 P.3d at 717.

¶ 63 Moreover, the prosecutor's arguments regarding McMurray's lack of concern about K.D. and her bravery on the witness stand could not have resulted in an improper verdict on the sexual exploitation charge because they primarily related to the sexual assault count — on which the jury acquitted McMurray. When a jury returns a split verdict, it is unlikely the jury was "swayed by any potentially improper argument," *People v. Snelling*, 2022 COA 116M, ¶ 37, 523 P.3d 447, 486, and permitting the argument did not "undermine[] the trial's fundamental fairness as to cast serious

doubt on the judgment of conviction's reliability," *Sparks*, ¶ 4, 434 P.3d at 717.

¶ 64    In sum, we conclude that McMurray failed to establish that the court plainly erred by not sua sponte striking the first four challenged arguments.

### 3. The Court Did Not Commit Harmless Error by Allowing the Alleged Prosecutorial Misconduct to Which McMurray Objected to at Trial

¶ 65    McMurray contends that the prosecutor "denigrated defense counsel" during closing argument when she said that "[t]he only reason that video was played by the defense was to humiliate [K.D.]" Defense counsel contemporaneously objected.  The court did not say it was sustaining the objection but responded, "Let's move on." We conclude that any error was harmless.

¶ 66    The People do not argue that the prosecutor did not denigrate defense counsel.  The People acknowledge that defense played the video at trial "to support [McMurray's] defense that he was not guilty of sexual assault (incapable of appraising)."  Instead, the People contend that "there is no error to correct" because the court sustained defense counsel's objection by saying, "Let's move on." We do not need to address these arguments, however.  Even if we

assume that the prosecutor's statements improperly denigrated defense counsel and the court erred by not expressly sustaining defense counsel's objection, we find that any error was harmless.

¶ 67 Again, the prosecutor's statements could not have resulted in an improper verdict because the video primarily related to the sexual assault charge, of which the jury acquitted McMurray. Thus, it is highly unlikely that the prosecutor's statement questioning defense counsel's motives resulted in prejudice to McMurray; there is no reasonable probability the statement contributed to McMurray's conviction for sexual exploitation of a child. *See Snelling*, ¶ 37, 523 P.3d at 486; *Crider*, 186 P.3d at 43; *Monroe*, ¶ 17, 468 P.3d at 1276.

¶ 68 Therefore, we hold that, even if the court erred by permitting the prosecutor to suggest that defense counsel played the video only to humiliate K.D. — and even if the prosecution's suggestion related to the sexual exploitation of a child count — the error was harmless.

### III.   Disposition

¶ 69 The judgment of conviction is affirmed.

JUDGE DUNN and JUDGE KUHN concur.